DENNIS KLASCH, Individually; MARILYN LIND, Individu-
ally; and DENNIS KLASCH, MARILYN LIND, and
REVA S. ARCHER, as Co-Special Administrators for
the ESTATE OF HELEN KLASCH, Appellants, *v.* WAL-
GREEN CO., an Illinois Corporation dba WALGREENS,
Respondent.

No. 54805

November 23, 2011                                   264 P.3d 1155

*Bradley Drendel & Jeanney* and *Bill Bradley*, Reno, for
Appellants.

*Stutz, Artiano, Shinoff & Holtz* and *James F. Holtz*, Las Vegas,
for Respondent.

Before the Court EN BANC.

# OPINION

By the Court, PARRAGUIRRE, J.:

In this appeal, we consider the duty of care that a pharmacist owes his or her customers. Specifically, we are asked to clarify whether a pharmacist's only duty is to fill a customer's prescription with the correct medication and dosage or if, under certain circumstances, a pharmacist may have a duty to do more. We conclude that when a pharmacist has knowledge of a customer-specific risk with respect to a prescribed medication, the pharmacist has a duty to exercise reasonable care in warning the customer

or notifying the prescribing doctor of this risk. Having determined that the pharmacist in this case had knowledge of a customer-specific risk, we conclude that the summary judgment record before the district court was inadequate to conclude, as a matter of law, that no genuine issues of fact remain as to breach of duty and causation of injury. Accordingly, we reverse the district court's summary judgment in favor of respondent and remand this case to the district court.

## FACTS

In December 2005, Helen Klasch visited Dr. Fredrick Tanenggee, M.D., for the first time. While filling out paperwork concerning her medical history, Klasch indicated that she might have a sulfa allergy. People with sulfa allergies generally experience minor skin rashes when exposed to sulfa, but in a small number of cases, the sulfa exposure may cause a toxic reaction in the person's skin, potentially leading to death.[1] Although still largely unpredictable, people who have experienced a past allergic reaction to sulfa are at a heightened risk for suffering this toxic reaction in the event of future sulfa exposure. After some further discussion with Dr. Tanenggee's assistant, this possible sulfa allergy was recorded on Klasch's medical chart with a question mark ("Sulfa?").

In July 2006, Klasch returned to Dr. Tanenggee's office, complaining of "abdominal fullness." After performing routine tests, Dr. Tanenggee diagnosed her with a urinary tract infection. Dr. Tanenggee told Klasch that under normal circumstances, her infection could be treated most effectively with Bactrim, a sulfa-based antibiotic. Given the notation in her chart, however, Dr. Tanenggee asked Klasch to clarify how certain she was of her sulfa allergy. After some further discussion, Klasch downplayed the previous notation and asked Dr. Tanenggee to write her a prescription for Bactrim. Dr. Tanenggee complied, and Klasch dropped off the prescription at Walgreens Pharmacy on her way home from Dr. Tanenggee's office.

Later that same day, Klasch's caretaker returned to Walgreens to pick up the prescription. Upon asking a pharmacy employee to release the prescription, the employee told the caretaker that Klasch's prescription had been "flagged" by Walgreens' computer system while it was being filled. Walgreens maintains a "pa-

---

[1]As explained by appellants' proffered standard-of-care expert, this reaction is known as Stevens-Johnson Syndrome or Toxic Epidermal Necrosis (SJS/TEN). A person afflicted with SJS/TEN may suffer "blistering of the mucous membranes, typically in the mouth, eyes, and vagina, and patchy areas of rash, followed by the entire top layer of skin (the epidermis) peeling off in sheets from large areas of the body."

tient profile'' for each of its customers, which its pharmacists use to identify any potential allergic reactions, harmful interactions with other medications, or adverse side effects that a customer may have to a particular medication. The employee told Klasch's caretaker that the prescription had been flagged because Klasch's patient profile indicated that she was allergic to sulfa-based drugs.[2] The caretaker then asked the employee to call Klasch and to speak with her directly.

A Walgreens employee called Klasch and conveyed that her prescription had been flagged because of her sulfa allergy. In response, Klasch reportedly indicated that she had taken Bactrim in the past and that she had not experienced any adverse reaction to it. Satisfied with this clarification, a pharmacist then manually overrode the computer system's flag, and the prescription was released to Klasch's caretaker.[3]

Later that day, after taking the medication, Klasch complained that she felt ''itchy.'' The following day, Klasch called Dr. Tanenggee's office and left a voice mail in which she stated that she was wrong about not having a sulfa allergy. Klasch's condition continued to worsen, and she was taken to the emergency room. After being diagnosed with SJS/TEN, Klasch was transferred to a burn center, where she eventually lapsed into a coma and passed away. At the time Klasch was removed from life support, she had burns covering 40 to 50 percent of her body.

Klasch's two children (the Klasches) brought a wrongful death action against Walgreens, alleging that its pharmacist breached the duty of care owed to their mother. Specifically, the Klasches contended that Walgreens' pharmacist breached her duty of care by failing to adequately warn Klasch of the prescribed medication's risks in light of her allergy to it or, alternatively, by failing to call Dr. Tanenggee to clarify whether he really meant to prescribe a medication to which she was allergic.[4]

Walgreens filed a motion for summary judgment, contending that in a majority of jurisdictions, the learned-intermediary doc-

---

[2]The record is not clear as to when or why Walgreens entered Klasch's sulfa allergy into her patient profile. It does show that, in 2000, Walgreens filled a prescription for Klasch for a non-sulfa-based alternative drug.

[3]The parties dispute the specifics of the encounter between Klasch's caretaker and Walgreens' employee. In the caretaker's deposition, she gave the above account, and she was certain that the employee with whom she spoke and who called Klasch was a man. Walgreens, however, asserts that the person who spoke with the caretaker and who called Klasch was the actual pharmacist, who was a woman. In her deposition, the pharmacist recalled personally speaking with the caretaker to explain why the prescription had been flagged and personally calling Klasch.

[4]The Klasches also brought suit against Dr. Tanenggee, but the parties reached a settlement prior to this appeal.

trine limits a pharmacist's duty to do anything more than correctly fill prescriptions as written. Walgreens contended that since its pharmacist had filled Klasch's prescription with the correct medication and dosage, it had, as a matter of law, fulfilled its duty to her.[5]

Following what it perceived to be the "majority rule," the district court granted Walgreens' summary judgment motion on the basis that "the pharmacist's limited duty is to properly fill the prescription, as written by the physician, unless there is plain error or the prescription is obviously fatal." This appeal followed.

## DISCUSSION

Although this court has not previously considered the learned-intermediary doctrine, the issues raised in this appeal compel us to consider its applicability and scope. In so doing, we first adopt the learned-intermediary doctrine in the context of pharmacist/customer tort litigation and hold that pharmacists have no duty to warn of a prescribed medication's generalized risks.

We next consider whether the learned-intermediary doctrine likewise insulates a pharmacist from liability when he or she has knowledge of a customer-specific risk. Following the modern trend of case law, we conclude that the learned-intermediary doctrine does not foreclose a pharmacist's potential for liability when the pharmacist has knowledge of a customer-specific risk. Instead, under these circumstances, a pharmacist has a duty to exercise reasonable care in warning the customer or notifying the prescribing doctor of the risk. Because factual issues remain in this case regarding breach of duty and causation of injury, we reverse the district court's summary judgment in favor of Walgreens and remand this case to the district court.[6]

### Standard of review

We review an appeal from an order granting summary judgment de novo. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). Summary judgment is appropriate "when the pleadings and other evidence on file demonstrate that no genuine

---

[5]Walgreens was also granted summary judgment on the Klasches' negligent-infliction-of-emotional-distress claims, a ruling they do not challenge on appeal.

[6]Because neither party has addressed whether the statutes and regulations governing the practice of pharmacy apply to this case, we do not address any potential applicability in this opinion. *See Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006) (noting that it is a party's responsibility to "present relevant authority" in support of any arguments raised on appeal).

issue as to any material fact remains and that the moving party is entitled to a judgment as a matter of law." *Id.* (quotation omitted). When reviewing a motion for summary judgment, "the evidence, and any reasonable inferences drawn from it, must be viewed in a light most favorable to the nonmoving party." *Id.*

*The learned-intermediary doctrine prevents pharmacists from interfering with the doctor-patient relationship*

To prevail on a negligence claim, a plaintiff must establish four elements: (1) the existence of a duty of care, (2) breach of that duty, (3) legal causation, and (4) damages. *Sanchez v. Wal-Mart Stores*, 125 Nev. 818, 824, 221 P.3d 1276, 1280 (2009). At issue in this case is the interplay between the first two elements: the scope of Walgreens' duty, and whether it may have breached this duty. Walgreens acknowledges that it owed the Klasches' mother a duty to correctly fill her prescription, but contends that it did not owe her a duty to warn her of the risk the medication posed to her or to notify her prescribing doctor of that risk. Walgreens contends that these additional duties would be foreclosed under the learned-intermediary doctrine.

Traditionally, the learned-intermediary doctrine has been used to insulate drug manufacturers from liability in products-liability lawsuits.[7] Under the learned-intermediary doctrine, a drug manufacturer is immune from liability to a patient taking the manufacturer's drug so long as the manufacturer has provided the patient's doctor with all relevant safety information for that drug.[8] It is then up to the patient's doctor—who has the benefit of knowing the patient's specific situation—to convey to the patient any information that the doctor deems relevant.[9]

---

[7]"The learned intermediary doctrine derives from § 402A of the Restatement (Second) of Torts." *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003). Section 402A of the Restatement (Second) of Torts addresses a seller's liability for physical harm caused to a consumer by the seller's product. Restatement (Second) of Torts § 402A (1965). Comment k to § 402A explains that sellers of "[u]navoidably unsafe products," such as prescription drugs, can avoid liability by including adequate warnings with the products in lieu of redesigning them to make them safer. *Id.* § 402A cmt. k.

[8]*See Thom*, 353 F.3d at 851 ("[T]he 'learned intermediary doctrine' . . . shields manufacturers of prescription drugs from liability where the manufacturer adequately warns a patient's prescribing physician of the potential risks inherent in the use of the product.").

[9]*See McKee v. American Home Products, Corp.*, 782 P.2d 1045, 1050-51 (Wash. 1989) (" 'It is the physician who is in the best position to decide when to use and how and when to inform his patient regarding risks and benefits pertaining to drug therapy.' " (quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 96, at 688 (5th ed. 1984))).

Jurisdictions adopting the learned-intermediary doctrine in the context of pharmacist/customer tort litigation have put forth a similar rationale: that between the doctor and the pharmacist, the doctor is in the best position to warn the customer of a given medication's generalized risks.[10] Or, viewed more pragmatically, the doctrine prevents pharmacists from constantly second-guessing a prescribing doctor's judgment simply in order to avoid his or her own liability to the customer.[11] In this sense, the learned-intermediary doctrine preserves the pharmacist's role as a conduit for dispensing much-needed prescription medications.

Because we believe that these public-policy considerations are sound, we adopt the learned-intermediary doctrine in the context of pharmacist/customer tort litigation. Accordingly, Nevada pharmacists have no duty to warn their customers of the generalized risks inherent in the prescriptions they fill.

*The learned-intermediary doctrine does not foreclose a pharmacist's potential for liability when the pharmacist has knowledge of a customer-specific risk*

Having adopted the learned-intermediary doctrine, we next define its scope. To this end, we find the Supreme Court of Illinois' decision in *Happel v. Wal-Mart Stores, Inc.*, 766 N.E.2d 1118 (2002), to be particularly instructive. In *Happel*, a customer with an aspirin allergy requested that Wal-Mart fill her prescription for

---

[10]*See, e.g., Eldridge v. Eli Lilly & Co.*, 485 N.E.2d 551, 553 (Ill. App. Ct. 1985) ("The doctor acts as a learned intermediary on behalf of the ultimate consumer. . . . To fulfil[l] the duty which the plaintiff urges us to impose would require the pharmacist to learn the customer's condition and monitor his drug usage."); *Nichols v. Central Merchandise, Inc.*, 817 P.2d 1131, 1133 (Kan. Ct. App. 1991) ("[B]ecause the doctor is the learned intermediary between the manufacturer and the patient, the patient should rely on the doctor; the pharmacist, at least under the facts of this case, has no legal duty to warn the patient of potential consequences from the use of the drug prescribed by the doctor."); *Bichler v. Willing*, 397 N.Y.S.2d 57, 59 (App. Div. 1977) ("[W]hen a consumer asks a druggist to fill a prescription, thus enabling him to obtain a drug which is not otherwise available to the public, he does not rely on the druggist's judgment[,] . . . but rather he places that confidence and reliance in the physician who prescribed the remedy.").

[11]*See, e.g., Ingram v. Hook's Drugs, Inc.*, 476 N.E.2d 881, 886-87 (Ind. Ct. App. 1985) ("[W]eighing the benefits of a medication against potential dangers that are associated with it requires an individualized medical judgment. This individualized treatment is available in the context of a physician-patient relationship. . . . It is not present, however, in the context of a pharmacist filling a prescription for a retail customer."); *McKee*, 782 P.2d at 1053 ("Imposing a duty such as [the plaintiff] urges would, in essence, require the pharmacist to question the physician's judgment regarding the appropriateness of each customer's prescription. Sound policy reasons exist for not imposing such a duty.").

Toradol, a drug that, unbeknownst to the customer, was contraindicated for people with aspirin allergies.[12] *Id.* at 1121. The customer had previously told Wal-Mart's pharmacists that she was allergic to aspirin, and the pharmacists had entered this information into the pharmacy's computer system. *Id.* Nonetheless, the pharmacist who filled the Toradol prescription released it to the customer's husband without warning him of the contraindication. *Id.*

After taking the medication and suffering injuries, the customer brought a negligence action against Wal-Mart, contending that its pharmacist had breached her duty of care by failing to warn the customer's husband that the Toradol prescription was contraindicated for people with aspirin allergies. *Id.* at 1122. The trial court granted Wal-Mart's summary judgment motion on the basis that Wal-Mart had no duty to warn of the drug's risks. *Id.*

On appeal to the Supreme Court of Illinois, Wal-Mart contended that the learned-intermediary doctrine foreclosed any duty to warn the customer of the drug's risks and that the trial court had therefore properly granted it summary judgment. *Id.* at 1125. The *Happel* court rejected this argument, concluding that "this case is outside the purview of the learned intermediary doctrine." *Id.* at 1127.

In reaching this conclusion, the *Happel* court first explained that the purpose behind the doctrine was to prevent a pharmacist from interjecting himself into the doctor-patient relationship, which would, in essence, force the pharmacist to "practice medicine without a license." *Id.* (quotation omitted). In spite of this general rule, however, the court went on to conclude that "[t]hese reasons for not imposing a duty to warn on pharmacists do not apply in the instant case." *Id.* Specifically, the court pointed to the fact that Wal-Mart "was aware not only of [the customer's] drug allergies, but also that Toradol was contraindicated for persons . . . with allergies to aspirin." *Id.* Given these facts, the *Happel* court concluded that "[i]mposing a duty to warn of this contraindication would not require the pharmacist to learn the customer's condition and monitor his drug usage," nor would it force the pharmacist to "practice medicine without a license." *Id.* at 1128 (quotations omitted).

Having concluded that the public-policy considerations behind the learned-intermediary doctrine are less persuasive when a pharmacist has knowledge of a customer-specific risk with respect to a prescribed medication, the *Happel* court concluded that Wal-Mart

---

[12]"A contraindication is a serious limitation on a drug's use, necessarily implying grave consequences if it is ignored." *Happel*, 766 N.E.2d at 1125; *see Hand v. Krakowski*, 453 N.Y.S.2d 121, 123 (App. Div. 1982) (a contraindication refers to "a circumstance under which the drug must never be given" (quotation omitted)).

indeed owed its customer a duty. In remanding the case to the trial court, the *Happel* court framed Wal-Mart's duty as follows:

> [W]e hold that a narrow duty to warn exists where, as in the instant case, a pharmacy has patient-specific information about drug allergies, and knows that the drug being prescribed is contraindicated for the individual patient. In such instances, a pharmacy has a duty to warn either the prescribing physician or the patient of the potential danger.

*Id.* at 1129. *See Walton v. Bayer Corp.*, 643 F.3d 994, 1000 (7th Cir. 2011) ("What a pharmacy sometimes knows, however, without investigation, . . . and even a treating physician may not know, is susceptibilities of particular customers of the pharmacy to the side effects of a drug that it sells them—susceptibilities because of other drugs that the pharmacy knows the customer is taking, or a pre-existing physical or mental condition (again known to it) that makes the drug contraindicated for the customer—and then it must warn either the customer or his physician. But not otherwise." (citations omitted)).

We find the analysis of the *Happel* court persuasive. Consistent with the Supreme Court of Illinois and what we perceive to be the modern trend of case law, we hold that the learned-intermediary doctrine does not insulate a pharmacist from liability when he or she has knowledge of a customer-specific risk.[13] Instead, when a pharmacist has such knowledge, the pharmacist has a duty to warn the customer or to notify the prescribing doctor of the customer-specific risk.

*Factual issues remain*

Having adopted the learned-intermediary doctrine and defined its scope, we consider its application to the facts of this case. Here, the Klasches contend that Walgreens' pharmacist breached her

---

[13]Consistent with *Happel*, numerous other jurisdictions have trended toward imposing a limited duty on pharmacists so as to account for situations in which a pharmacist has knowledge of a customer-specific risk. *Compare Schaerrer v. Stewart's Plaza Pharmacy, Inc.*, 79 P.3d 922, 933 (Utah 2003) ("We extend the learned intermediary rule to exempt pharmacies from strict products liability when they properly fill a physician's prescription."), *with Downing v. Hyland Pharmacy*, 194 P.3d 944, 948 (Utah 2008) ("[O]ur application of the [learned-intermediary] rule in *Schaerrer* does not mean that we will not limit its application to negligence claims when the facts and public policy require such limitation. We conclude that this is such a case. The facts alleged here state a cause of action for negligence as a matter of law."); *see also Downing*, 194 P.3d at 947 n.2 (compiling similar cases).

duty of care by failing to adequately convey the potential danger inherent in a person with a sulfa allergy taking a sulfa-based medication. Because a sulfa allergy is not the type of generalized risk for which the learned-intermediary doctrine insulates a pharmacist from liability, and because Walgreens arguably had specific information at its disposal regarding Klasch's sulfa allergy, the learned-intermediary doctrine does not insulate Walgreens from liability as a matter of law.

Walgreens contends, however, that it discharged its duty when one of its employees phoned Klasch and relayed the contents of its computer system to her. Walgreens further argues that, even assuming duty and breach, it did not cause Klasch injury because her prescribing doctor knew she might have a sulfa allergy yet prescribed Bactrim anyway.

The difficulty with these arguments is that, while Walgreens presented a fully supported summary judgment motion on the basis that it had no duty beyond correctly filling a nonobviously fatal prescription, its motion made only passing reference to breach of duty and causation of injury, and did so mainly in reply. Breach of duty and causation are classically questions of fact. *Frances v. Plaza Pacific Equities*, 109 Nev. 91, 94, 847 P.2d 722, 724 (1993); *Nehls v. Leonard*, 97 Nev. 325, 328, 630 P.2d 258, 260 (1981).

Complicating matters further, the expert depositions were not completed until after briefing concluded, and the district court rejected the Klasches' supplemental opposition even though Walgreens stipulated to its filing. Given our rejection of Walgreens' principal argument that it had no duty as a matter of law, which materially changes the issues presented by the summary judgment motion, we conclude that potential factual issues remain that preclude affirming the district court's summary judgment at this point.

## CONCLUSION

By insulating pharmacists from liability for failing to warn their customers of a medication's generalized risks, the learned-intermediary doctrine prevents pharmacists from interfering with the doctor-patient relationship. Because the public-policy considerations behind this doctrine are sound, we adopt it in the context of pharmacist/customer tort litigation. These public-policy considerations are less persuasive, however, when a pharmacist has knowledge of a customer-specific risk with respect to a prescribed medication. Accordingly, in such circumstances, the learned-intermediary doctrine does not insulate a pharmacist from liability, and the pharmacist instead has a duty to exercise reasonable care

in warning the customer or notifying the prescribing doctor of this risk. Because factual issues remain in this case as to breach of duty and causation of injury, we reverse the district court's summary judgment in favor of Walgreens and remand this case to the district court for proceedings consistent with this opinion.

SAITTA, C.J., and DOUGLAS, CHERRY, GIBBONS, PICKERING, and HARDESTY, JJ., concur.