133 Nev., Advance Opinion 80

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| LEE E. SZYMBORSKI,<br>Appellant,<br>vs.<br>SPRING MOUNTAIN TREATMENT CENTER; AND DARRYL DUBROCA, IN HIS OFFICIAL CAPACITY,<br>Respondents. | No. 66398<br><br>**FILED**<br>OCT 26 2017<br>ELIZABETH A. BROWN<br>CLERK OF SUPREME COURT<br>BY<br>CHIEF DEPUTY CLERK |

Appeal from a district court order dismissing a medical malpractice action. Eighth Judicial District Court, Clark County; Joseph T. Bonaventure, Senior Judge, and Joanna S. Kishner, Judge.

*Affirmed in part, reversed in part, and remanded.*

Garman Turner Gordon LLP and Eric R. Olsen, Las Vegas,
for Appellant.

Hall Prangle & Schoonveld, LLC, and Tyson J. Dobbs and Michael E. Prangle, Las Vegas,
for Respondents.

---

BEFORE PICKERING, HARDESTY and PARRAGUIRRE, JJ.

*OPINION*

By the Court, PICKERING, J.:

This is an appeal from a district court order dismissing a complaint against a medical treatment center for failure to attach a

medical expert affidavit pursuant to NRS 41A.071. The district court determined that the allegations in appellant's complaint regarding the discharge of his son from respondent's treatment center were for medical malpractice, and because appellant did not attach a medical expert affidavit, his complaint required dismissal under NRS 41A.071. Appellant contends that the district court erred in dismissing his complaint because his claims are based in ordinary negligence, not medical malpractice, and therefore, an affidavit was not required. We agree as to appellant's claims for negligence, social-worker malpractice, gross negligence, negligence per se, and negligent hiring, supervision, and training, and disagree as to his claim for professional negligence. We therefore affirm in part, reverse in part, and remand.

I.

We accept as true the following facts alleged in appellant's complaint: Appellant Lee Szymborski's (Szymborski) adult son, Sean Szymborski (Sean), was admitted to Spring Mountain Treatment Center (Spring Mountain) for care and treatment due to self-inflicted wounds. When it came time to discharge Sean, licensed social workers undertook the discharge planning, but also delegated some tasks to a Masters of Arts (MA). Szymborski and Sean had a turbulent relationship, and Sean was discharged with diagnoses of psychosis and spice abuse. A social worker documented that Szymborski directed a case manager not to release Sean to Szymborski's home upon discharge and that the case manager would help Sean find alternative housing. Spring Mountain nurses also documented that Sean did not want to live with his father, noting that he grew agitated when talking about his father and expressed trepidation about returning to his father's home. Due to this ongoing conflict, Sean

participated in treatment planning to find housing independent of Szymborski.

On the day of Sean's release, an MA met with Sean to confirm the address of the apartment where Sean planned to live upon discharge. The MA noted, and Sean's continuing patient care plan confirmed, that Sean was vague about the apartment's address and wanted to stop at his father's house first to retrieve his debit card before going to his own apartment. The MA and case manager never verified that Sean had arranged to live elsewhere, and informed Sean that they would only give him enough money to take a taxi to his father's home. Spring Mountain did not inform Szymborski that they were releasing Sean, nor did they inform him that they were sending Sean to his residence that day. After being dropped off, Sean vandalized Szymborski's home, causing $20,000 in property damage, then disappeared until his arrest three weeks later. Szymborski was not home when Sean arrived.

Szymborski then filed a complaint with the State of Nevada Department of Health and Human Services—Division of Public and Behavioral Health (Division) about Sean's discharge and Spring Mountain's disregard of the discharge planning obligations imposed on it by NAC 449.332. After investigation, the Division issued a report crediting Szymborski's claims and finding that Spring Mountain committed multiple violations of NAC 449.332.

In his complaint, Szymborski asserted four claims against Spring Mountain, its CEO, Daryl Dubroca, and various social workers and MAs (collectively, Spring Mountain): negligence (count I); professional negligence (count II); malpractice, gross negligence, negligence per se (count III); and negligent hiring, supervision, and training (count IV).

Szymborski attached the Division's report to his complaint, but not an expert medical affidavit. Spring Mountain moved to dismiss the complaint because Szymborski failed to attach an expert medical affidavit pursuant to NRS 41A.071.[1] The district court granted Spring Mountain's motion to dismiss, finding that the claims in the complaint were for medical malpractice and required an expert medical affidavit. Szymborski appeals.

## II.

"This court rigorously reviews de novo a district court order granting an NRCP 12(b)(5) motion to dismiss, accepting all of the plaintiff's factual allegations as true and drawing every reasonable inference in the plaintiff's favor to determine whether the allegations are sufficient to state a claim for relief." *DeBoer v. Sr. Bridges of Sparks Fam. Hosp.*, 128 Nev. 406, 409, 282 P.3d 727, 730 (2012). A complaint should only be dismissed for failure to state a claim if "it appears beyond a doubt that it could prove no set of facts, which, if true, would entitle it to relief." *Id.* at 410, 282 P.3d at 730 (internal quotation marks omitted). In contrast, NRS 41A.071 provides that "[i]f an action for medical malpractice . . . is filed in the district court, the district court shall dismiss

---

[1]Spring Mountain argues as an alternative basis for affirmance that it did not owe a duty of care to Szymborski, a nonpatient third party, to protect him from the property damage caused by Sean. We do not consider this issue, as Spring Mountain raises it for the first time on appeal. *See Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981) ("A point not urged in the trial court, unless it goes to the jurisdiction of that court, is deemed to have been waived and will not be considered on appeal."). Our analysis is confined to the NRS 41A.071 affidavit issues raised and resolved in district court, not the legal sufficiency of Szymborski's claims.

the action, without prejudice, if the action is filed without a[ ] [medical expert] affidavit."[2]

## A.

Spring Mountain argues that because Szymborski's claims involve employees of a hospital rendering services, the claims must be for medical malpractice and NRS 41A.071's affidavit requirement applies. However, when a hospital performs nonmedical services, it can be liable under principles of ordinary negligence. *See Deboer*, 128 Nev. at 411-12, 282 P.3d at 731-32 ("[A] healthcare-based corporation's status as a medical facility cannot shield it from other forms of tort liability when it acts outside of the scope of medicine."). "[U]nder general negligence standards, medical facilities have a duty to exercise reasonable care to avoid foreseeable harm when they furnish nonmedical services." *Id.* at 412, 282 P.3d at 732. For example, in *Deboer*, the district court erred in classifying the patient's claim as one for medical malpractice as opposed to ordinary negligence because the claim "was not related to medical diagnosis, judgment, or treatment." *Id.* at 408, 282 P.3d at 731-32. Thus, the mere fact that Szymborski's claims are brought against Spring Mountain, a

---

[2]As written at the time of filing, NRS 41A.071 only applied to actions for medical or dental malpractice. *Egan v. Chambers*, 129 Nev. 239, 243, 299 P.3d 364, 367 (2013). In 2015, the Nevada Legislature amended NRS 41A.071 to apply to claims for "professional negligence" and eliminated the terms "medical malpractice" and "dental malpractice" from the statute. 2015 Nev. Stat., ch. 439, § 6, at 2527. The revisions to NRS 41A.071 still require that the expert affidavit be submitted by a *medical* expert who practices in a substantially similar area as the alleged professional negligence. *See* NRS 41A.071(2).

mental health treatment center rendering services, does not mean the claims sound in medical malpractice.

## B.

Instead, we must determine whether Szymborski's claims involve medical diagnosis, judgment, or treatment or are based on Spring Mountain's performance of nonmedical services.[3] *See id.*; *see also Gold v. Greenwich Hosp. Ass'n*, 811 A.2d 1266, 1270 (Conn. 2002) (determining that the plaintiff's complaint was for medical malpractice because the "alleged negligence [was] substantially related to medical diagnosis and involved the exercise of medical judgment"); *Gunter v. Lab. Corp. of Am.*, 121 S.W.3d 636, 640 (Tenn. 2003) ("When a plaintiff's claim is for injuries resulting from negligent medical treatment, the claim sounds in medical malpractice. When a plaintiff's claim is for injuries resulting from negligent acts that did not affect the medical treatment of a patient, the claim sounds in ordinary negligence.") (citation omitted).

Allegations of breach of duty involving medical judgment, diagnosis, or treatment indicate that a claim is for medical malpractice. *See Papa v. Brunswick Gen. Hosp.*, 517 N.Y.S.2d 762, 763 (App. Div. 1987) ("When the duty owing to the plaintiff by the defendant arises from the physician-patient relationship or is substantially related to medical

---

[3]Szymborski argued in his reply brief that "his claims are not and cannot be for medical malpractice, because he was not a patient receiving services at the hospital. Only Sean Szymborski can bring such a claim." Szymborski failed to make this argument in his opening brief and thus, we do not consider it. *See LaChance v. State*, 130 Nev. 263, 277 n.7, 321 P.3d 919, 929 n.7 (2014) ("Because the Nevada Rules of Appellate Procedure do not allow litigants to raise new issues for the first time in a reply brief, we decline to consider this argument.").

treatment, the breach thereof gives rise to an action sounding in medical malpractice as opposed to simple negligence."); *Estate of French v. Stratford House*, 333 S.W.3d 546, 555 (Tenn. 2011) ("If the alleged breach of duty of care set forth in the complaint is one that was based upon medical art or science, training, or expertise, then it is a claim for medical malpractice."), *superseded by statute* Tenn. Code. Ann. 29-26-101 *et seq.* (2011), *as recognized in Ellithorpe v. Weismark*, 479 S.W.3d 818, 824-26 (Tenn. 2015). By extension, if the jury can only evaluate the plaintiff's claims after presentation of the standards of care by a medical expert, then it is a medical malpractice claim. *See Bryant*, 684 N.W.2d at 872; *Humboldt Gen. Hosp. v. Sixth Judicial Dist. Court*, 132 Nev., Adv. Op. 53, 376 P.3d 167, 172 (2016) (reasoning that a medical expert affidavit was required where the scope of a patient's informed consent was at issue, because medical expert testimony would be necessary to determine the reasonableness of the health care provider's actions). If, on the other hand, the reasonableness of the health care provider's actions can be evaluated by jurors on the basis of their common knowledge and experience, then the claim is likely based in ordinary negligence. *See Bryant*, 684 N.W.2d at 872.

## C.

The distinction between medical malpractice and negligence may be subtle in some cases, and parties may incorrectly invoke language that designates a claim as either medical malpractice or ordinary negligence, when the opposite is in fact true. *See Weiner v. Lenox Hill Hosp.*, 673 N.E.2d 914, 916 (N.Y. 1996) ("[M]edical malpractice is but a species of negligence and no rigid analytical line separates the two.") (internal quotation marks omitted). Given the subtle distinction, a single

set of circumstances may sound in both ordinary negligence and medical malpractice, and an inartful complaint will likely use terms that invoke both causes of action, particularly where, as here, the plaintiff is proceeding pro se in district court. *See Mayo v. United States*, 785 F. Supp. 2d 692, 695 (M.D. Tenn. 2011) ("The designations given to the claims by the plaintiff or defendant are not determinative, and a single complaint may be founded upon both ordinary negligence principles and the medical malpractice statute."). Therefore, we must look to the gravamen or "substantial point or essence" of each claim rather than its form to see whether each individual claim is for medical malpractice or ordinary negligence. *Estate of French*, 333 S.W.3d at 557 (citing *Black's Law Dictionary* 770 (9th ed. 2009)); *see State Farm Mut. Auto. Ins. Co. v. Wharton*, 88 Nev. 183, 186, 495 P.2d 359, 361 (1972) (in determining whether an action is for contract or tort, "it is the nature of the grievance rather than the form of the pleadings that determines the character of the action"); *Benz-Elliot v. Barrett Enters., LP*, 456 S.W.3d 140, 148-49 (Tenn. 2015) (the gravamen of the claims rather than the gravamen of the complaint determines statute of limitations issues because "parties may assert alternative claims and defenses and request alternative relief in a single complaint, regardless of the consistency of the claims and defenses"). Such an approach is especially important at the motion to dismiss stage, where this court draws every reasonable inference in favor of the plaintiff, and a complaint should only be dismissed if there is no set of facts that could state a claim for relief. *Deboer*, 128 Nev. at 409, 282 P.3d at 730.

Here, Szymborski's complaint alleges four claims for relief. Our case law declares that a medical malpractice claim filed without an

Supreme Court
OF
Nevada

(O) 1947A

8

expert affidavit is "void *ab initio*." *Washoe Med. Ctr. v. Second Judicial Dist. Court*, 122 Nev. 1298, 1304, 148 P.3d 790, 794 (2006); *but cf. Szydel v. Markman*, 121 Nev. 453, 458-59, 117 P.3d 200, 204 (2005) (determining that an NRS 41A.071 medical expert affidavit is not required when the claim is for one of the res ipsa loquitur circumstances set forth in NRS 41A.100). Under this precedent, the medical malpractice claims that fail to comply with NRS 41A.071 must be severed and dismissed, while allowing the claims for ordinary negligence to proceed. *See Fierle v. Perez*, 125 Nev. 728, 740, 219 P.3d 906, 914 (2009), *as modified* (Dec. 16, 2009), *overruled on other grounds by Egan*, 129 Nev. 239, 299 P.3d 364. Therefore, with the above principles in mind, we next determine which of Szymborski's claims must be dismissed for failure to attach the required medical expert affidavit, and which claims allege facts sounding in ordinary negligence. Because the district court's sole basis for dismissal was Szymborski's failure to attach a medical expert affidavit, the question before us is not the validity, sufficiency, or merit of Szymborski's claims. Instead, the issue is whether the claims are for medical malpractice, requiring dismissal under NRS 41A.071, or for ordinary negligence or other ostensible tort.

### III.

### A.

Szymborski's first claim for relief is for negligence. Szymborski alleges that Spring Mountain "in the exercise of reasonable care had a duty to know, or should have known, that they are required to comply with NAC 449.332, regarding discharge plan of Patients; and with NRS 449.765 to 449.786." He accuses Spring Mountain of breaching its duty by failing to "carefully investigate, monitor and/or oversee discharge activities . . . including but not limited to, the development,

implementation, and supervision of discharge policies and practices." Spring Mountain also negligently "permitted the dumping of [Sean], by taxi to the home of [Szymborski], without notice to [Szymborski], in violation of their own internal policies; NAC 449.332; and NRS 449.[7]65 to 449.786."

The essence of this claim is that Spring Mountain was negligent in discharging Sean in a taxi with only enough money to go to his father's house, without informing his father. The alleged negligence or breach of duty does not involve medical judgment, treatment, or diagnosis, and would not require medical expert testimony at trial. The allegations are based on Spring Mountain employees performing nonmedical functions such as failing to verify Sean had his own apartment, arranging for Sean to be dropped off at his father's house with no way to get to his supposed apartment, and declining to notify Szymborski of this plan despite knowledge of his volatile and contentious relationship with his son. *See DeBoer*, 128 Nev. at 411, 282 P.3d at 731 ("Aside from the wide range of medical services healthcare-based facilities provide, they also offer diverse nonmedical services to the public, including, but not limited to, aftercare planning with social workers.").[4]

---

[4]Spring Mountain argues that Szymborski's citations to NAC 449.332 and NRS 449.765-449.786 demonstrate that the claim is based on Spring Mountain's failure to perform medical functions. Although determining whether a patient will likely suffer negative health consequences upon discharge is a medical function, Szymborski's allegations stem from Spring Mountain's failure to follow policies and procedures in the manner that it discharged Sean.

We note that there are allegations in Szymborki's first claim that could involve medical diagnosis, treatment, and judgment. Regardless, at this stage of the proceedings this court must determine whether there is any set of facts that, if true, would entitle Szymborski to relief and not whether there is a set of facts that would not provide Szymborski relief. Therefore, we conclude that Szymborski's first claim for relief alleges a set of duties and facts for ordinary negligence and should not have been dismissed for want of an NRS 41A.071 medical expert affidavit.

## B.

Szymborski's second claim is for professional negligence. Szymborski alleges that defendants, including Spring Mountain, licensed social workers, registered nurses, psychiatrists, and the hospital administrator, "owed [Szymborski] a duty to employ medical staff adequately trained in the care and treatment of patients consistent with the degree of skill and learning possessed by competent medical personnel practicing in the United States of America under the same or similar circumstances; and a duty to comply with Nevada statutes, including NRS 41A.015." The defendants breached their duty of care by "failing to function as a patient advocate by providing proper care to the patients at the time of discharge."

Szymborski argues that to the extent the claim alleges professional negligence of social workers and the hospital administrator in discharge planning, no medical expert affidavit is required. However, Szymborski's claim for professional negligence does not allege how these professionals were involved in the nonmedical aspects of Sean's discharge. This claim only involves allegations of medical duties and would require

medical expert testimony to assist the jury in determining the standard of care. We cannot discern a set of duties or facts in this claim based in ordinary negligence. As such, Szymborski's professional negligence claim against Spring Mountain is grounded in medical malpractice and was properly dismissed for failure to attach a medical expert affidavit pursuant to NRS 41A.071.[5]

## C.

The third claim for relief is titled "malpractice, gross negligence, and negligence per se." In this composite claim, Szymborski appears to be asserting a claim for social worker malpractice. Thus, he cites NAC 641B.225(1), defining "malpractice" in the practice of social work as "conduct which falls below the standard of care required of a licensee under the circumstances and which proximately causes damage to a client." He also cites to NAC 641B.225(3), which defines gross negligence in the practice of social work as "conduct which represents an extreme departure from the standard of care required of a licensee under the circumstances and which proximately causes damage to a client." He

---

[5]Szymborski argues on appeal that the district court erred in denying his motion for reconsideration because the district court did not consider a letter from the Bureau Chief of the Division, providing that the Division's investigation substantiated Szymborski's complaints against Spring Mountain. However, whether the district court considered this letter is immaterial because the district court had determined that Szymborski's claims were for medical malpractice and the letter did not satisfy the requirements of NRS 41A.071. *See Buckwalter v. Eighth Judicial Dist. Court*, 126 Nev. 200, 202, 234 P.3d 920, 922 (2010) ("NRS 41A.071 imposes an affidavit requirement, which NRS 53.045 permits a litigant to meet either by sworn affidavit or unsworn declaration made under penalty of perjury.").

 

states, "[d]efendants including JOHN DOE 1 in the capacity of Licensed Social Worker (LSW) is entrusted to provide medical care owed to patients and a duty to provide adequate medical treatment, to protect the patient and the public at large." Moreover, "[s]aid Defendant breached the duty of care by discharging the patient, paying for a taxi only to Plaintiff's address (although the patient asked to pick up a debit card, then be transported to another residence), in violation of discharge policies and procedures, pursuant to NAC 449.332."

Although Szymborski uses terms like "medical care" and "medical treatment" in the description of the duty of care owed, the gravamen of this claim is that the social worker committed malpractice and was grossly negligent because the social worker discharged Sean to Szymborski's home, despite knowing of the deeply troubled relationship between Sean and his father, the father's request that Sean not be discharged to his home, and Sean's request to continue on to another location. This breach of the standard of care was not based on the social worker's medical judgment. A social worker, or perhaps the Division, rather than a medical expert, would be required to aid the jury in determining the applicable standard of care for Szymborski's malpractice and gross negligence claims.

For his negligence per se claim, Szymborski argues that Spring Mountain violated NAC 449.332. While some of the provisions in NAC 449.332 invoke medical judgment, the factual allegations in the complaint and the Division's findings demonstrate that Szymborski alleges violations of NAC 449.332 that do not involve medical judgment, treatment, or diagnosis. For instance, Szymborski alleges that Spring

 

Mountain violated NAC 449.332(4)[6] because they did not discharge Sean to a safe environment. Szymborski alleges that he was not given notice of Sean's discharge in violation of NAC 449.332(11) (requiring hospitals to provide patient's families with information necessary to care for the patient post-discharge). He argues that Spring Mountain failed to document that Sean had arranged for a place to live and, therefore, breached NAC 449.332(4) and NAC 449.332(9) (providing that the evaluation of the needs of the patient in discharge planning and the discharge plan must be documented). Finally, he contends that Spring Mountain failed to follow their own discharge policies in violation of NAC 449.332(1)(b) (mandating that hospitals "develop and carry out policies and procedures regarding the process for discharge planning"). The factual allegations underlying these specific regulatory violations do not involve medical diagnosis, treatment, or judgment. *See Lee v. Detroit Med. Ctr.*, 775 N.W.2d 326, 332-34 (Mich. Ct. App. 2009) (recognizing that a social worker's and doctor's dereliction of the statutory duty to report abuse was ordinary negligence and did not require an affidavit of merit).

---

[6]NAC 449.332(4) provides:

> An evaluation of the needs of a patient relating to discharge planning must include, without limitation, consideration of:
> (a) The needs of the patient for postoperative services and the availability of those services;
> (b) The capacity of the patient for self-care; and
> (c) The possibility of returning the patient to a previous care setting or making another appropriate placement of the patient after discharge.

As such, Szymborski makes claims for malpractice, negligence, and negligence per se that do not sound in medical malpractice and, therefore, do not require a medical expert affidavit under NRS 41A.071. To the extent this count alleges violations of NAC 449.332 involving medical judgment, diagnosis, or treatment, those allegations must be severed from Szymborski's claims moving forward in the litigation.

## D.

Szymborski's final claim for relief is negligent hiring, supervision, and training. He alleges that Spring Mountain "owed a duty to its patients, and the community at large, to hire, train, and/or supervise competent medical and staff personnel, including supervisors, and LSW, to provide care and treatment to its patients." Spring Mountain breached its duty of care "by failing to adequately provide competent employees, in the performance of the job . . . ." Moreover, Spring Mountain "established unsafe medical practices, including 'dumping' patients without complying with discharge instructions." "As a result of the lack of medical care and treatment provided by Defendant, Defendants breached their duty to Plaintiff and the members of the class by failing to protect them from foreseeable harm, resulting in a lack of mental health treatment for Plaintiff and the public at large."

A medical malpractice statute will not apply to claims for negligent supervision, hiring, or training where the underlying facts of the case do not fall within the definition of medical malpractice. *See Burke v. Snyder*, 899 So. 2d 336, 341 (Fla. Dist. Ct. App. 2005) (holding that the pre-suit requirements of a medical malpractice claim did not apply to plaintiff's claim for negligent hiring, supervising, and retaining the physician because "the claim of sexual misconduct in this case is not a



claim arising out of negligent medical treatment"); *compare with Blackwell v. Goodwin*, 513 S.E.2d 542, 545-46 (Ga. Ct. App. 1999) (determining that the statute of repose for medical malpractice applies to plaintiff's claims against the nurse's employer for negligent hiring, retention, supervision, and entrustment because the claims arose out of the nurse's administration of an injection). Here, as discussed above, the underlying facts of this complaint do not involve medical judgment, treatment, or diagnosis. Instead, Szymborski seeks remedy for the actions of various social workers, case managers, and MAs not finding Sean suitable accommodations and transportation after he was medically discharged despite accepting, or appearing to accept, the responsibility of doing so. Therefore, drawing every reasonable inference in favor of Szymborski, we hold that his claim for negligent hiring, supervision, and training does not sound in medical malpractice and therefore, does not need to meet the requirements of NRS 41A.071.

## IV.

A claim is grounded in medical malpractice and must adhere to NRS 41A.071 where the facts underlying the claim involve medical diagnosis, treatment, or judgment and the standards of care pertaining to the medical issue require explanation to the jury from a medical expert at trial. Here, Szymborski's claims for negligence, malpractice, gross negligence, negligence per se, and negligent hiring, training, and supervision state claims for relief not based in medical treatment or judgment and, therefore, were not for medical malpractice and should not have been dismissed for failure to attach the NRS 41A.071 affidavit. But, Szymborski's claim for professional negligence against Spring Mountain sounds in medical malpractice and was properly dismissed for failure to

 

attach a medical expert affidavit. Accordingly, we reverse in part, affirm in part, and remand.

_____ Pickering , J.
Pickering

I concur:

_____ , J.
Parraguirre

SUPREME COURT
OF
NEVADA

(O) 1947A

HARDESTY, J., concurring in part and dissenting in part:

I concur with the majority's determination that a reviewing court should review allegations in a complaint not only by the words used but by the gravamen of the action. *State Farm Mut. Auto. Ins. Co. v. Wharton*, 88 Nev. 183, 186, 495 P.2d 359, 361 (1972). I also concur that under that standard, the gravamen in counts I and IV fall outside claims for medical malpractice. But, as the majority determines, the essence of the allegations in count II seeks damages for medical malpractice because that count is asserting a breach of the exercise of medical treatment, diagnosis, or judgment. I would equally apply that analysis to the allegations made in count III. In count III, Szymborski explicitly seeks recovery for actions that fall within NRS 41A.009's definition of medical malpractice and specifically required an affidavit to assess any breach of the standard of care.

Count III alleges malpractice, gross negligence, and negligence per se, and that defendants, including the LSW, "[are] entrusted to provide medical care owed to patients and a duty to provide adequate medical treatment." Count III further alleges that the LSW "breached the duty of care by discharging the patient . . . in violation of discharge policies and procedures, pursuant to NAC 449.332." Szymborski also cited NAC 641B.225, which defines the standard of care for professional incompetence in the context of social work. Szymborski similarly alleges that the hospital negligently discharged Sean in count I; however, count III is expressly couched in terms of medical care and medical treatment.

Szymborski referenced several documents in his complaint, including the patient continuing care plan, the nursing progress note, and the acute physician discharge progress note, but these documents are not

in the record. As described in the complaint, both the nursing progress note and the acute physician discharge progress note indicated that Sean was reluctant to return to his father's home. However, the patient continuing care plan stated that upon discharge, Sean was to first go to his father's house and then to a different Las Vegas address. The acute physician discharge progress note also noted that Sean had "participated in treatment planning to find housing." Further, Szymborski alleged that the MA met with Sean prior to Sean's release and the MA documented that Sean was vague about the address for his apartment. The social services discharge note did not include an address for the apartment.

It appears these documents were prepared by physicians, which demonstrates that the decisions regarding Sean's discharge involved medical judgment or treatment, and the claims Szymborski alleges are breaches of that judgment or treatment and are grounded in medical malpractice. Thus, the gravamen of this claim is that the LSW, an "employee of a hospital," failed to render services using "the reasonable care, skill or knowledge ordinarily used under similar circumstances." NRS 41A.009. Therefore, an affidavit was required to connect the patient continuing care plan and other discharge documents with Sean's release in order to determine whether the social worker's conduct fell below the standard of care. Accordingly, I would affirm the district court with regard to counts II and III.

_____, J.
Hardesty

