SUSAN DeBOER, in Her Capacity as the Legal Guardian of GAYLE SAVAGE, an Adult Ward, Appellant, v. SENIOR BRIDGES OF SPARKS FAMILY HOSPITAL, INC., dba NORTHERN NEVADA MEDICAL CENTER, a Domestic Corporation, Respondent.

No. 57107

August 9, 2012                                        282 P.3d 727

*Bradley Drendel & Jeanney* and *Joseph S. Bradley*, Reno, for Appellant.

*Hall Prangle & Schoonveld, LLC*, and *Tyler M. Crawford* and *David P. Ferrainolo*, Las Vegas, for Respondent.

Before CHERRY, C.J., PICKERING and HARDESTY, JJ.

## OPINION

By the Court, CHERRY, C.J.:

In this appeal, we examine the duty of care owed by a medical facility when performing nonmedical functions. While we have embraced the duty owed by a medical facility towards its patients with respect to medical treatment, *see Wickliffe v. Sunrise Hospital*, 101 Nev. 542, 548, 706 P.2d 1383, 1388 (1985) (holding "that a hospital is required to employ that degree of skill and care expected of a reasonably competent hospital in the same or similar circumstances"), we have not previously addressed whether a medical facility has a duty of care beyond the duty to provide competent medical care. We take this opportunity to recognize that when a medical facility performs a nonmedical function, general negligence standards apply, such that the medical facility has a duty to exercise reasonable care to avoid foreseeable harm as a result of its actions.

Here, the complaint alleged that appellant, a cognitively impaired patient who required a guardian to make medical and financial decisions for her, was exploited by a third party after a social worker employed by the respondent medical facility provided the third party with a preprinted general power-of-attorney form, which the patient subsequently executed in furtherance of her discharge from the facility. The manner in which the medical facility allegedly effectuated the discharge of the patient could lead a reasonable jury to find that the patient's financial injuries were a foreseeable result of the facility's conduct. Thus, the district court erred when it found that the medical facility owed the patient no duty beyond the duty to provide competent medical care and dismissed the complaint for failure to state a claim. Accordingly, we reverse the order dismissing this action and remand this case to the district court for further proceedings.

## FACTS

Gayle Savage[1] was admitted to respondent Senior Bridges of Sparks Family Hospital, Inc., d.b.a. Northern Nevada Medical Center, after being discovered confused and wandering in a neighbor's backyard. Senior Bridges, Savage's complaint alleged, is an acute care facility specializing in the evaluation, treatment, and placement of elderly patients. Upon entering Senior Bridges, Savage apparently was diagnosed with mild to moderate dementia as a result of Alzheimer's disease. Because of Savage's condition, her doctor concluded that she needed a guardian to make medical and financial decisions for her.

One week after Savage's admission, a Senior Bridges social worker met with an individual identified as Peggy Violat Six, who offered to care for Savage upon her discharge from Senior Bridges on the condition that Savage execute a general power of attorney designating Six as her appointee for financial matters. Thereafter, Savage alleges, the Senior Bridges social worker provided Savage with a preprinted general power-of-attorney form, which Savage executed, ostensibly giving Six power over Savage's personal and financial affairs. A notary public employed by Senior Bridges purportedly verified Savage's execution and acknowledgment of the general power-of-attorney form. Savage was subsequently discharged by Senior Bridges into the care of Six, who allegedly proceeded to exploit Savage by misappropriating her money, real property, and other assets.

---

[1]The named appellant in this appeal is the Washoe County Public Guardian, Susan DeBoer, who brought the action in her capacity as guardian for Gayle Savage. It is unclear from the complaint precisely when or under what circumstances DeBoer was appointed guardian of Savage.

Based on Six's alleged exploitation of Savage, the Washoe County Public Guardian, in her capacity as legal guardian of Savage, filed a complaint against Senior Bridges for negligence. The complaint asserted that Senior Bridges breached its duty of care by allowing Savage to assign a general power of attorney in favor of Six, when a reasonable investigation would have established that Savage lacked the requisite mental competence to execute a power of attorney or to protect herself from exploitation.

In response, Senior Bridges filed a motion to dismiss the complaint under NRCP 12(b)(5) for failure to state a claim upon which relief can be granted, contending that it did not have a duty to protect Savage from financial exploitation by a third party because, as a medical facility, its duty was limited to providing Savage with appropriate medical services and competent medical care. Savage opposed the motion, arguing that Senior Bridges had a duty to protect her from foreseeable harm of the type that she suffered. Alternatively, Savage asserted that Senior Bridges assumed a duty to protect her by facilitating her execution of the power-of-attorney form.

The district court granted Senior Bridges' motion to dismiss, finding that Senior Bridges did not owe Savage a duty of care beyond the duty to provide competent medical care, and asserting that it would be fundamentally unfair to hold a medical facility liable for damages resulting from actions that occurred outside the scope of the healthcare-based relationship. Moreover, the court concluded that the harm of financial exploitation was not so "necessarily foreseeable" as to warrant imposing a duty of care on Senior Bridges in this case. Finally, the court expressed concern that recognizing a duty to assist patients with financial planning decisions would require medical facilities to employ financial planning experts and could potentially open the floodgates of litigation.[2] This appeal followed.

## DISCUSSION

This court rigorously reviews de novo a district court order granting an NRCP 12(b)(5) motion to dismiss, accepting all of the plaintiff's factual allegations as true and drawing every reasonable inference in the plaintiff's favor to determine whether the allegations are sufficient to state a claim for relief. *Sanchez v. Wal-Mart*

---

[2]As this opinion addresses the duty of a medical facility to exercise reasonable care and not a specific duty to assist patients with financial planning, we disagree with the district court's concerns that hospitals will be required to employ financial planners to protect them from actions such as this one.

*Stores*, 125 Nev. 818, 823, 221 P.3d 1276, 1280 (2009); *Shoen v. SAC Holding Corp.*, 122 Nev. 621, 634-35, 137 P.3d 1171, 1180 (2006). A complaint should be dismissed for failure to state a claim "only if it appears beyond a doubt that it could prove no set of facts, which, if true, would entitle it to relief." *Buzz Stew, LLC v. City of N. Las Vegas*, 124 Nev. 224, 228, 181 P.3d 670, 672 (2008).

Savage contends that Senior Bridges owed her a duty of care beyond the duty to provide competent medical care. In particular, she claims that the social worker employed by the facility failed to exercise due care when he helped her arrange her financial affairs in furtherance of her discharge. Senior Bridges acknowledges that it owed Savage a duty of reasonable care in the treatment of her medical conditions, but argues that it did not owe Savage a duty to protect her against third-party financial exploitation.[3]

The district court, quoting *Wickliffe v. Sunrise Hospital*, 101 Nev. 542, 548, 706 P.2d 1383, 1388 (1985), found that Senior Bridges was required to employ "the 'degree of skill and care expected of a reasonably competent hospital in the same or similar circumstances' " in diagnosing and treating Savage's cognitive impairments, but had no duty to assist Savage with financial decisions prior to discharge. In doing so, the district court narrowly circumscribed the legal duty that Senior Bridges owed to Savage. The district court effectively furnished Senior Bridges with full immunity from claims stemming from nonmedical injuries on its premises. This is not sound policy and does not conform to our negligence jurisprudence. *See generally Moody v. Manny's Auto Repair*, 110 Nev. 320, 333, 871 P.2d 935, 943 (1994) (holding, in the context of landowner liability, that "all persons in this society have an obligation to act reasonably and . . . should be held to the general duty of reasonable care when another is injured"). Immunity from liability cannot be enjoyed simply due to one's legal status. *Wright v. Schum*, 105 Nev. 611, 613-14, 781 P.2d 1142, 1143 (1989). Thus, a healthcare-based corporation's status as a medical facility

---

[3]In her briefs filed in this court, Savage only argues under general negligence principles that Senior Bridges did not act with reasonable care in facilitating her aftercare plans. Hence, in deciding this appeal, we need not address whether a medical facility has an affirmative duty to protect its patients from the harmful acts of third parties. *See Sanchez v. Wal-Mart Stores*, 125 Nev. 818, 824, 221 P.3d 1276, 1280-81 (2009) (in Nevada, there is no duty to protect a person from the harmful conduct of a third party unless "(1) a special relationship exists between the parties or between the defendant and the identifiable victim, and (2) the harm created by the defendant's conduct is foreseeable"); *see also Sparks v. Alpha Tau Omega Fraternity*, 127 Nev. 287, 297-98, 255 P.3d 238, 244 (2011); *Scialabba v. Brandise Constr. Co.*, 112 Nev. 965, 968-69, 921 P.2d 928, 930 (1996).

cannot shield it from other forms of tort liability when it acts outside of the scope of medicine. Instead, we establish that medical facilities should be required to conform to normal standards of reasonableness under general principles of tort law when performing nonmedical functions. Courts in other jurisdictions, including Connecticut, Louisiana, Michigan, New York, and Tennessee, have developed a similar standard. *See, e.g., Gold v. Greenwich Hosp. Ass'n*, 811 A.2d 1266, 1270 (Conn. 2002) (claim was not characterized under ordinary negligence principles because it involved medical diagnosis and judgment); *Coleman v. Deno*, 813 So. 2d 303, 315 (La. 2002) (claims against a healthcare facility not arising in medical malpractice are governed by general tort law); *Dorris v. Detroit Osteopathic Hosp.*, 594 N.W.2d 455, 465 (Mich. 1999) (ordinary negligence claims "raise issues that are within the common knowledge and experience of the jury," whereas medical malpractice claims "raise questions involving medical judgment"); *Weiner v. Lenox Hill Hospital*, 673 N.E.2d 914, 916 (N.Y. 1996) ("[W]hen 'the gravamen of the complaint is not negligence in furnishing medical treatment to a patient, but the hospital's failure in fulfilling a different duty,' the claim sounds in negligence." (quoting *Bleiler v. Bodnar*, 479 N.E.2d 230, 235 (N.Y. 1985))); *Estate of French v. Stratford House*, 333 S.W.3d 546, 556 (Tenn. 2011) (claims sound in ordinary negligence when the act or omission complained of requires no specialized medical skills).

Aside from the wide range of medical services healthcare-based facilities provide, they also offer diverse nonmedical services to the public, including, but not limited to, aftercare planning with social workers.[4] Although such services do not fall within the scope of the duty owed by a medical facility towards its patients as contemplated in *Wickliffe*, medical facilities across this state nonetheless " ' " "must exercise reasonable care not to subject others to an unreasonable risk of harm" ' " " when acting in roles unrelated to the practice of medicine. *Wright*, 105 Nev. at 614, 781 P.2d at 1143 (quoting *Turpel v. Sayles*, 101 Nev. 35, 38, 692 P.2d 1290, 1292 (1985) (quoting *Sargent v. Ross*, 308 A.2d 528, 534 (N.H. 1973))). A social worker helping a patient to establish financial arrangements in effectuating the patient's discharge cannot be regarded as a medical function. *Cf. Brown v. United Blood Services*, 109 Nev. 758, 766, 858 P.2d 391, 396 (1993) (rejecting the proposition that a blood bank supplying blood from a donor infected with HIV should be held to an ordinary negligence standard). Savage's complaint was grounded in ordinary negligence, as it was

---

[4]The statutes pertaining to the regulation of social workers are found in NRS Chapter 641B.

not related to medical diagnosis, judgment, or treatment. As such, the district court erred in branding Savage's complaint as a medical malpractice claim.[5] Therefore, the question in this case is not whether Senior Bridges is liable to Savage as a medical facility, as the district court suggests, but rather, whether it is liable to Savage under a general negligence theory.

In order to prevail on a traditional negligence theory, a plaintiff must establish that (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, (3) the breach was the legal cause of the plaintiff's injuries, and (4) the plaintiff suffered damages. *Klasch v. Walgreen Co.*, 127 Nev. 832, 837, 264 P.3d 1155, 1158 (2011); *see Driscoll v. Erreguible*, 87 Nev. 97, 101, 482 P.2d 291, 294 (1971) ("Negligence is failure to exercise that degree of care in a given situation which a reasonable man under similar circumstances would exercise."). This appeal concerns only the first of these four elements—the existence of a duty of care. As discussed herein, under general negligence standards, medical facilities have a duty to exercise reasonable care to avoid foreseeable harm when they furnish nonmedical services. *See Wright*, 105 Nev. at 614, 781 P.2d at 1143. The district court erred when it determined as a matter of law, based on the pleadings alone, that Senior Bridges' actions breached its duty of reasonable care. *See Butler v. Bayer*, 123 Nev. 450, 464, 168 P.3d 1055, 1065 (2007) ("Because the question of whether reasonable care was exercised almost always involves factual inquiries, it is a matter that must generally be decided by a jury.").

Accepting the allegations of the complaint as true and drawing inferences in favor of Savage, *Sanchez v. Wal-Mart Stores*, 125 Nev. 818, 823, 221 P.3d 1276, 1280 (2009), we conclude that the manner in which Senior Bridges effectuated Savage's discharge could lead a reasonable jury to find that her financial injuries were a foreseeable result of the facility's conduct. Because Senior Bridges specializes in elder care, a jury could reasonably determine that the facility should be particularly aware of concerns related to financial abuse of older, cognitively impaired patients. *See* Jane A. Black, Note, *The Not-So-Golden Years: Power of Attorney, Elder Abuse, and Why Our Laws Are Failing a Vulnerable Population*, 82 St. John's L. Rev. 289, 291 (2008) (stating that "[f]inancial exploitation of the elderly is the third most common

---

[5]The district court essentially applied a medical malpractice standard. To prevail on a medical malpractice action, the plaintiff must demonstrate: "(1) that the doctor's conduct departed from the accepted standard of medical care or practice; (2) that the doctor's conduct was both the actual and proximate cause of the plaintiff's injury; and (3) that the plaintiff suffered damages." *Prabhu v. Levine*, 112 Nev. 1538, 1543, 930 P.2d 103, 107 (1996).

category—and fastest growing form—of elder abuse''); Dana Shilling, *Legal Issues of Dependent and Incapacitated People* ¶ 7.7, at 7-21 (2007) (recognizing that financial exploitation of the elderly by trustees and guardians is a significant problem); *see generally* NRS 200.5091-.50995 (defining and establishing punishments for crimes related to abuse, neglect, exploitation, and isolation of elderly and otherwise vulnerable individuals). Moreover, a jury could reasonably find that Senior Bridges was on notice that Savage was especially vulnerable to financial exploitation due to the fact that a Senior Bridges doctor had determined that Savage's dementia rendered her unable to make financial decisions for herself. *See* Matthew A. Christiansen, *Unconscionable: Financial Exploitation of Elderly Persons With Dementia*, 9 Marq. Elder's Advisor 383, 415 (2008) (stating that ''[f]inancial exploitation of elderly persons with dementia is particularly troublesome''). A jury could further find that someone in Savage's psychological condition may lack the cognitive ability to manage his or her own financial affairs, including important monetary decisions surrounding the activation of the power of attorney. *See* Julia Calvo Bueno, *Reforming Durable Power of Attorney Statutes to Combat Financial Exploitation of the Elderly*, 16 NAELA Q. 20, 20 (2003) (noting that studies have suggested a significant rate of occurrence of financial abuse through powers of attorney); Carla Spivack, *Why the Testamentary Doctrine of Undue Influence Should Be Abolished*, 58 U. Kan. L. Rev. 245, 298 (2010) (citing one study estimating that 40 percent of elder abuse cases involve financial exploitation). In accordance with the standard negligence framework, we conclude that Senior Bridges may have breached its duty of care to Savage by not acting reasonably in facilitating the power-of-attorney forms in furtherance of discharging her from its medical facility. Accordingly, dismissal of this action for failure to state a claim was improper.

## CONCLUSION

The allegations in Savage's complaint, taken as true, establish a viable claim for relief. Consequently, we conclude that the district court erred in dismissing the complaint. Potential factual issues exist as to whether Senior Bridges acted negligently in overseeing Savage's release from its medical facility. Therefore, we reverse the district court's order dismissing the action against Senior Bridges and remand this case to the district court for further proceedings consistent with this opinion.

PICKERING and HARDESTY, JJ., concur.