140 Nev., Advance Opinion 45

IN THE SUPREME COURT OF THE STATE OF NEVADA

SOMSAK LIMPRASERT, AN
INDIVIDUAL,
Appellant,
vs.
PAM SPECIALTY HOSPITAL OF LAS
VEGAS LLC, A FOREIGN LIMITED
LIABILITY COMPANY, D/B/A PAM
SPECIALTY HOSPITAL OF LAS
VEGAS,
Respondent.

No. 84607

FILED

JUN 27 2024

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order granting a motion to dismiss.
Eighth Judicial District Court, Clark County; Susan Johnson, Judge.

*Reversed and remanded.*

Injury Lawyers of Nevada and Jared B. Anderson and David J. Churchill,
Las Vegas,
for Appellant.

Lewis Brisbois Bisgaard & Smith, LLP, and Keith A. Weaver and Alissa N.
Bestick, Las Vegas,
for Respondent.

BEFORE THE SUPREME COURT, EN BANC.

24-22328

## OPINION

By the Court, STIGLICH, J.:

In this opinion, we address two issues concerning claims for professional negligence. First, we clarify the standard for distinguishing professional negligence claims, which require a supporting affidavit from a medical expert under NRS 41A.071, from ordinary negligence claims. In doing so, we overrule the common knowledge exception enunciated in *Estate of Curtis v. South Las Vegas Medical Investors, LLC*, 136 Nev. 350, 466 P.3d 1263 (2020). Second, we reiterate that even when a medical expert affidavit is filed after the complaint, NRS 41A.071 is satisfied under *Baxter v. Dignity Health*, 131 Nev. 759, 357 P.3d 927 (2015), if the affidavit was incorporated by reference in the complaint and was executed before the complaint was filed. Because appellant Somsak Limprasert alleged an injury caused by a provider of health care rendering services in the course of a professional relationship, we determine that his claims sound in professional negligence and thus required an affidavit under NRS 41A.071. We further conclude, however, that Limprasert's expert declaration complied with NRS 41A.071 under *Baxter*, and the district court therefore erred by dismissing his complaint for noncompliance. Accordingly, we reverse the dismissal of Limprasert's professional negligence claims and remand for further proceedings.

### FACTS AND PROCEDURAL HISTORY

Limprasert was diagnosed with COVID-19 and acute hypoxic respiratory failure, among other illnesses, for which he received acute care

 

from a hospital.[1] He was subsequently transferred or admitted to respondent PAM Specialty Hospital of Las Vegas, LLC, for rehabilitation and treatment for the effects of COVID-19, respiratory failure, cough, fever, and general malaise. He remained at PAM for approximately one month.

While at PAM, Limprasert was bedridden and unable to stand without support. PAM and individuals including nurse practitioners, caregivers, medical professionals, staff members, and/or employees, agents, or independent contractors working for PAM, and who were pleaded as fictitious Doe defendants, were aware that Limprasert was unable to stand without being supported. On August 3, 2020, PAM's workers assisted Limprasert to rise from his bed. Then, they unexpectedly let go of him while he was in a standing position, which caused him to fall to the ground and suffer injuries.

Limprasert filed a complaint against PAM on August 3, 2021, asserting claims for negligence and abuse of the vulnerable.[2] In the alternative, he asserted claims against PAM under Nevada's medical malpractice statutes. However, Limprasert failed to attach the supporting declaration of Stewart Curtis, D.O., to his complaint. On September 9, 2021, PAM filed a motion to dismiss. The following day, Limprasert filed an erratum to his complaint with Dr. Curtis's declaration attached. The erratum was therefore filed after the 1-year statute of limitations had run

---

[1]These factual allegations are drawn from the complaint and expert declaration and deemed true for purposes of this appeal. *See Buzz Stew, LLC v. City of North Las Vegas*, 124 Nev. 224, 228, 181 P.3d 670, 672 (2008).

[2]PAM is used to indicate collectively the hospital, its employees, and its agents. Limprasert does not challenge the dismissal of his abuse of the vulnerable claim on appeal.

on his professional negligence claims. *See* NRS 41A.097(2) (stating in relevant part that "an action for injury . . . against a provider of health care may not be commenced more than . . . 1 year after the plaintiff discovers . . . the injury"). Following a hearing, the district court found that Limprasert's claims sound in professional negligence, that Limprasert filed his complaint without the supporting declaration of an expert witness, and that the erratum was not filed at the same time as the complaint. Thus, the district court granted PAM's motion to dismiss.

Limprasert appealed, and the court of appeals determined that the district court erred by dismissing Limprasert's complaint because it alleged facts that could entitle him to relief under ordinary negligence principles. Additionally, the court of appeals found the district court erred by dismissing Limprasert's professional negligence claims because he complied with NRS 41A.071. The court of appeals reversed and remanded the case to the district court. PAM petitioned this court for judicial review, and we granted the petition.

## DISCUSSION

"We review a district court order granting a motion to dismiss de novo." *Zohar v. Zbiegien*, 130 Nev. 733, 736, 334 P.3d 402, 404 (2014). In doing so, we deem "all factual allegations in [the plaintiff's] complaint as true and draw all inferences in [the plaintiff's] favor." *Buzz Stew*, 124 Nev. at 228, 181 P.3d at 672. A "complaint should be dismissed only if it appears beyond a doubt that [the plaintiff] could prove no set of facts, which, if true, would entitle [the plaintiff] to relief." *Id.* We also review a "district court's decision to dismiss [a] complaint for failing to comply with NRS 41A.071 de novo." *Yafchak v. S. Las Vegas Med. Invs., LLC*, 138 Nev., Adv. Op. 70, 519 P.3d 37, 40 (2022).

Limprasert argues that his claims sound in ordinary negligence and alternatively, if his claims sound in professional negligence, that he satisfied the affidavit requirement for such claims. Addressing these arguments in turn, we determine that Limprasert has asserted claims for professional negligence rather than ordinary negligence. We agree, however, that he satisfied the affidavit requirement.

*Whether Limprasert's claims are for ordinary or professional negligence*

Limprasert argues that his claims sound in ordinary negligence because the negligence alleged does not involve medical judgment, treatment, or diagnosis and would not require expert testimony at trial. We disagree.

The Legislature has defined professional negligence by statute as "the failure of a provider of health care, *in rendering services*, to use the reasonable care, skill or knowledge ordinarily used under similar circumstances by similarly trained and experienced providers of health care." NRS 41A.015 (emphasis added). This definition suggests that a claim arising from services rendered within the course of the relationship between a patient and a health care provider sounds in professional negligence.

We have developed a body of caselaw consistent with this understanding. Indeed, this court has previously distinguished ordinary negligence from professional negligence within the health care context by examining whether the claim arose outside of the professional relationship. For example, in *DeBoer v. Senior Bridges of Sparks Family Hospital Inc.*, a patient with dementia suffered financial damages due to the actions of a social worker employed by an acute care facility. 128 Nev. 406, 408, 412, 282 P.3d 727, 729, 732 (2012). The social worker provided the patient with a preprinted general power-of-attorney form, which, upon execution, gave a

third party power over the patient's financial and personal affairs. *Id.* at 408, 282 P.3d at 729-30. The third party subsequently misappropriated the patient's money, real property, and other assets. *Id.* at 408, 282 P.3d at 730. We concluded that the care facility may have breached its duty of reasonable care under ordinary negligence principles by failing to act reasonably in performing the nonmedical function of facilitating the power-of-attorney forms to effectuate the patient's discharge. *Id.* at 413, 282 P.3d at 733. Thus, we concluded a medical facility should be held to general negligence standards of reasonableness when it "acts outside of the scope of medicine." *Id.* at 411, 282 P.3d at 731.

Similarly, in *Szymborski v. Spring Mountain Treatment Center*, a father sued his adult son's health care provider. 133 Nev. 638, 639, 644, 403 P.3d 1280, 1282, 1286 (2017). Conflict existed between the father and son, and the employees of the treatment center assured the father that his son would not be released to his house. *Id.* at 639, 403 P.3d at 1282-83. Nonetheless, without notifying the father, the son was released to the father's house. *Id.* at 640, 403 P.3d at 1283. The son promptly vandalized the father's home, causing a total of $20,000 in damage. *Id.* We determined the gravamen of the father's claim was that the treatment center breached its ordinary duty of care to the nonpatient father because the allegations pertained to the center performing nonmedical functions. *Id.* at 644, 403 P.3d at 1286.

Most recently, in *Estate of Curtis v. South Las Vegas Medical Investors, LLC*, we retreated from this line of cases. 136 Nev. 350, 351, 357, 466 P.3d 1263, 1265, 1269 (2020). In *Curtis*, a licensed nurse who was taking care of multiple patients mistakenly administered to the plaintiff morphine that had been prescribed for a different patient. *Id.* at 351, 466

P.3d at 1265. In determining whether this constituted professional negligence, we set out in full and adopted as appropriate for Nevada the two-part test the Michigan Supreme Court created in *Bryant v. Oakpointe Villa Nursing Centre, Inc.*, 684 N.W.2d 864 (2004):

> "[A] court must ask two fundamental questions in determining whether a claim sounds in ordinary negligence or [professional negligence]: (1) whether the claim pertains to an action that occurred within the course of a professional relationship; and (2) whether the claim raises questions of medical judgment beyond the realm of common knowledge and experience. If both these questions are answered in the affirmative, the action is subject to the procedural and substantive requirements that govern [professional negligence] actions."

*Id.* at 356, 466 P.3d at 1268 (alterations in original) (quoting *Bryant*, 684 N.W.2d at 871). Applying this test, we concluded that "although administering medication constitutes medical treatment, an allegation that a health care professional administered a patient's medicine to a different patient is an allegation of ordinary negligence that requires no expert testimony to assess." *Id.* at 357, 466 P.3d at 1269 (citation omitted). We further explained that the nurse's act of administering the morphine prescribed for someone else involved no "questions of medical judgment" and the nurse "used no professional judgment in administering the morphine—she simply gave [the plaintiff] the wrong drug because she had mixed up the prescriptions." *Id.* Thus, we concluded "where lay persons' common knowledge is sufficient to determine negligence without expert testimony," the so-called common knowledge exception could "be applied to determine whether a claim that appears to sound in professional negligence[] and does not fall under [the res ipsa loquitur statutory exceptions], actually sounds in ordinary negligence and is therefore not

subject to" the affidavit requirement. *Id.* at 350, 466 P.3d at 1265. To reach this conclusion, we relied on dicta from *Szymborski.*

We conclude that only the first half of the test that we adopted in *Curtis* properly applies in Nevada. That is, to determine whether a claim sounds in professional negligence, the question is whether the claim pertains to an action that occurred within the course of a professional relationship. If it does not, the claim is for ordinary negligence. If it does, the claim sounds in professional negligence and requires an affidavit unless a statutory exception applies. But the second part of the Michigan test adopted in *Curtis* is at odds with Nevada's statutory scheme. Unlike Michigan, Nevada has by statute, NRS 41A.100, and caselaw, *Peck v. Zipf,* 133 Nev. 890, 891, 407 P.3d 775, 777 (2017), provided that the common law res ipsa loquitur doctrine does not apply in professional negligence cases except in the limited instances specified in NRS 41A.100. That a claim raises a question that is within "the realm of common knowledge and experience" thus does not, except in the limited instances specified in NRS 41A.100, take it outside the affidavit-of-merit requirement in NRS 41A.071, making it confusing and unhelpful in deciding whether a claim sounds in professional or ordinary negligence.

"[U]nder the doctrine of stare decisis, we will not overturn absent compelling reasons for so doing." *Miller v. Burk,* 124 Nev. 579, 597, 188 P.3d 1112, 1124 (2008) (footnote omitted). Nonetheless, "when governing decisions prove to be 'unworkable or are badly reasoned,' they should be overruled." *State v. Lloyd,* 129 Nev. 739, 750, 312 P.3d 467, 474 (2013) (quoting *Payne v. Tennessee,* 501 U.S. 808, 827 (1991)). And here, *Curtis* has proven unworkable, creating conflicts with Nevada statutes and caselaw that have destabilized existing precedent in this area. For these

reasons, we overrule the second part of the *Curtis* test to the extent that it provides that the concept of common knowledge can be used to determine whether a claim is for professional or ordinary negligence. We emphasize that whether a claim sounds in ordinary negligence or professional negligence focuses on the nature of the conduct rather than on the complexity of proving a claim. The sole inquiry is whether the claim involves a provider of health care rendering services in a way that causes injury, not whether an expert affidavit or expert testimony is needed for a jury to understand the allegations.

Looking to the nature of the conduct alleged by Limprasert makes clear that his claims sound in professional negligence. The complaint alleges PAM knew that Limprasert was bedridden and unable to stand without support. It further alleges that PAM workers did not follow reasonable policies and procedures and that Limprasert relied on them to follow the doctor's orders with respect to his weakness and inability to care for himself. Additionally, Limprasert averred in his complaint that PAM negligently assisted him by helping him rise from his bed to change his sheets and then unexpectedly letting go of him while he was in a standing position, which caused him to fall to the ground and suffer injuries. Here, there is no dispute that PAM is a provider of health care and that Limprasert was a patient. Further, changing Limprasert's sheets and assisting him to stand during the process were services that PAM provided to Limprasert while he was recovering and bedridden. Thus, based upon the gravamen of Limprasert's allegations, we conclude his claims sound in professional negligence.

*Whether Limprasert's claims required an affidavit*

Having determined that Limprasert's claims are for professional negligence, we next turn to whether an affidavit was required.

Limprasert argues that he did not need an affidavit because the common knowledge exception creates an exception to the requirement. We disagree.

The Legislature has created a tightly scripted scheme for professional negligence actions in Nevada that limits recovery for noneconomic damages, mandates settlement conferences, and more. *See, e.g.*, NRS 41A.035; NRS 41A.081. As noted, under NRS 41A.071, a professional negligence action requires a supporting affidavit from a medical expert. *Washoe Med. Ctr. v. Second Jud. Dist. Ct.*, 122 Nev. 1298, 1304, 148 P.3d 790, 794 (2006). NRS 41A.071 was adopted in 2002 to replace the former Medical-Legal Screening Panel, which also required a supporting medical expert affidavit. *Id.* "According to NRS 41A.071's legislative history, the requirement that a complaint be filed with a medical expert affidavit was designed to streamline and expedite medical malpractice cases and lower overall costs, and the Legislature was concerned with strengthening the requirements for expert witnesses." *Id.* Accordingly, the general rule under Nevada's statutory scheme is that any professional negligence action filed without a supporting affidavit must be dismissed. *See id.* at 1304-05, 148 P.3d at 794-95.

Before NRS 41A.071 was enacted, we had recognized "the general rule that expert testimony must be used to establish medical malpractice, unless the propriety of the treatment, or the lack of it, is a matter of common knowledge of laymen." *Fernandez v. Admirand*, 108 Nev. 963, 969, 843 P.2d 354, 358 (1992) (collecting cases). Since NRS 41A.071's enactment, however, we have held a professional negligence action can only be filed without a supporting affidavit in narrow circumstances. Because the Legislature has enacted strict criteria for professional negligence

actions, the narrow and few exceptions to the affidavit requirement that it created reflect its policy choice.

Specifically, the Legislature has carved out statutory exceptions to the affidavit requirement for res ipsa loquitur, which we have applied and interpreted. *See* NRS 41A.100(1) (providing expert "evidence is not required and a rebuttable presumption that the personal injury or death was caused by negligence arises where evidence is presented" of any of five specific circumstances);[3] *see also Szydel v. Markman*, 121 Nev. 453, 454, 117 P.3d 200, 201 (2005) ("We conclude that the expert affidavit requirement does not apply when the malpractice action is based solely on the res ipsa loquitur doctrine."). For res ipsa loquitur cases, expert evidence that the standard of care was breached is unnecessary because the doctrine

---

[3]The following five exceptions are enumerated in NRS 41A.100(1):

(a) A foreign substance other than medication or a prosthetic device was unintentionally left within the body of a patient following surgery;

(b) An explosion or fire originating in a substance used in treatment occurred in the course of treatment;

(c) An unintended burn caused by heat, radiation or chemicals was suffered in the course of medical care;

(d) An injury was suffered during the course of treatment to a part of the body not directly involved in the treatment or proximate thereto; or

(e) A surgical procedure was performed on the wrong patient or the wrong organ, limb or part of a patient's body.

applies to fact patterns that can only arise where the care provided was negligent. Thus, proving the facts by "present[ing] some evidence that one . . . of the factual situations enumerated" in the statute exists necessarily establishes negligence. *Szydel*, 121 Nev. at 459, 117 P.3d at 204. No affidavit is needed in such circumstances because "[i]t would be unreasonable to require a plaintiff to expend unnecessary effort and expense to obtain an affidavit from a medical expert when expert testimony is not necessary for the plaintiff to succeed at trial." *Id.* at 460, 117 P.3d at 204.

For example, in *Szydel*, we determined that no affidavit was needed when a needle was left inside a patient's breast during a bilateral mastopexy or breast lift surgery. *Id.* at 454-55, 461, 117 P.3d at 201, 205; *see* NRS 41A.100(1)(a) (including the circumstance of "[a] foreign substance other than medication or a prosthetic device [being] unintentionally left within the body of a patient following surgery"). We have tended to strictly construe the res ipsa loquitur exceptions, however, concluding that they are available only when the circumstances expressly listed by the Legislature in NRS 41A.100 are present. *See Peck*, 133 Nev. at 891, 407 P.3d at 777 ("We reiterate that the enumerated res ipsa loquitur exceptions in NRS 41A.100 supersede the common knowledge res ipsa loquitur doctrine."). For example, in *Peck*, we concluded that NRS 41A.100(1)(a)'s circumstance of "[a] foreign substance other than medication or a prosthetic device [being] unintentionally left within the body of a patient following surgery" was not met when an intravenous needle was left in an individual's hand, because it was not the result of *surgery*. *Id.* at 891, 894, 407 P.3d at 777, 779; *see also Montanez v. Sparks Fam. Hosp., Inc.*, 137 Nev. 742, 744, 499 P.3d 1189, 1192 (2021) (concluding bacteria did not constitute a foreign substance

unintentionally left within the body of a patient after surgery for purposes of NRS 41A.100(1)(a) because "foreign substance" "was intended to mean something that a doctor purposefully implanted or used during surgery that was then left in the body unintentionally"). *But see Cummings v. Barber*, 136 Nev. 139, 140, 460 P.3d 963, 965 (2020) ("We conclude that although NRS 41A.100(1) generally applies only to objects left in the patient's body during the at-issue surgery, it can also apply in cases where, as here, the sole purpose of the at-issue surgery is to remove medical devices and related hardware implanted during a previous surgery."). Overall, under statute and our caselaw, actions for professional negligence that implicate the circumstances of res ipsa loquitur enumerated in NRS 41A.100 are narrowly excepted from the affidavit requirement.

In *Curtis*, we essentially created a new and very broad exception to the affidavit requirement in the form of a common knowledge exception. The exceptions to the affidavit requirement, however, are statutory, narrow, and few. The exceptions are a recognition that these types of injuries during treatment do not need an affidavit because res ipsa loquitur applies to fact patterns that can only arise where the care provided was negligent. We now overrule *Curtis* to the extent it created a common knowledge exception to the expert affidavit requirement. Whether and to what degree common knowledge may seem to obviate the need for an affidavit in the professional negligence sphere, such that a new exception is warranted, are issues in the purview of the Legislature. Accordingly, we hold an expert affidavit is required to support allegations that a provider of health care was negligent in rendering services unless a recognized exception is present.

Here, Limprasert does not argue that any of the res ipsa loquitur statutory exceptions enumerated in NRS 41A.100 apply to his claims, and we limit our review to the issues the parties present. *See Senjab v. Alhulaibi*, 137 Nev. 632, 633-34, 497 P.3d 618, 619 (2021) ("We will not supply an argument on a party's behalf but review only the issues the parties present."). Thus, we determine that Limprasert did not establish an exception to the affidavit requirement.

*Whether Limprasert satisfied the affidavit requirements for a professional negligence claim*

Limprasert next argues that even if his claims required an affidavit, the district court improperly granted the motion to dismiss because his expert declaration complied with the standard set forth in *Baxter v. Dignity Health*, 131 Nev. 759, 357 P.3d 927 (2015). Specifically, he contends that in accordance with *Baxter* and the public policy goals of NRS 41A.071, he established that a competent medical professional reviewed the allegations, that he obtained Dr. Curtis's declaration before filing the complaint, and that the complaint incorporates the declaration by reference. Further, he argues *Baxter* did not provide a specific time period by which a declaration that was inadvertently omitted must be filed and that PAM was not negatively affected by the late filing.

"If an action for professional negligence is filed in the district court, the district court shall dismiss the action, without prejudice, if the action is filed without an affidavit that . . . [s]upports the allegations contained in the action." NRS 41A.071(1). "The 'affidavit' can take the form of either a sworn affidavit or an unsworn declaration made under penalty of perjury." *Baxter*, 131 Nev. at 762, 357 P.3d at 929 (internal quotation marks omitted). The purposes behind the requirement include "to lower costs, reduce frivolous lawsuits, and ensure that medical malpractice

actions are filed in good faith based upon competent expert medical opinion." *Washoe Med. Ctr.*, 122 Nev. at 1304, 148 P.3d at 794 (internal quotation marks omitted). A complaint filed without the requisite supporting medical expert affidavit does not legally exist and cannot be amended. *Id.* at 1300-01, 148 P.3d at 792.

When reviewing the complaint on a motion to dismiss, "[a] court may also consider unattached evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *Baxter*, 131 Nev. at 764, 357 P.3d at 930 (internal quotation marks omitted). "NRS 41A.071 does not state that the affidavit of merit must be physically attached to the malpractice complaint . . . ." *Id.* at 764-65, 357 P.3d at 931.

> [W]here the complaint incorporates by reference a preexisting affidavit of merit, which is thereafter filed and served with the complaint, and no party contests the authenticity of the affidavit or its date, the affidavit of merit may properly be treated as part of the pleadings in evaluating a motion to dismiss.

*Id.* at 765, 357 P.3d at 931.

In *Baxter*, the plaintiff filed the declaration "five judicial hours after the complaint." *Id.* The declaration verified the truth of the allegations in the complaint, was sworn under penalty of perjury, and was dated three days before the complaint was filed. *Id.* We reasoned that the plaintiff "literally complied with NRS 41A.071" and the defendants were not negatively affected by the declaration being filed after the complaint because the complaint incorporated the declaration, the complaint and declaration were served on the defendants together, and the defendants could challenge the declaration's sufficiency in their motions to dismiss. *Id.*

Further, we reasoned that reading the complaint as incorporating the declaration promoted substantial justice and aligned with the policy goals of NRS 41A.071 because the plaintiff filed a medical malpractice claim only after procuring a declaration from a medical expert. *Id.* at 766, 357 P.3d at 931.

Limprasert asserted in his complaint "[t]hat the facts and circumstances of this case have been reviewed by a medical doctor named Stewart Curtis, D.O., who has provided a declaration of merit supporting the claims and allegations made in this complaint. *See* Declaration of Merit, attached hereto as Exhibit 1." However, Limprasert did not attach the declaration to the complaint that was filed on August 3, 2021. PAM moved to dismiss on September 9, 2021. The next day, Limprasert filed an erratum to his complaint with Dr. Curtis's declaration attached. Dr. Curtis's declaration was dated August 3, 2021. Dr. Curtis did not state explicitly in his declaration that he reviewed the complaint, but he did comment on the allegations pertaining to Limprasert's fall and stated that the "information in this declaration is based upon the information made available to me at the time of the declaration." The declaration was made under penalty of perjury. In his opposition to PAM's motion to dismiss, Limprasert included an email from Dr. Curtis that indicated the declaration was attached and that it was sent to Limprasert's attorney on August 3, 2021, at 12:41 p.m. The opposition also included an affidavit from Limprasert's attorney attesting "[t]hat only after the final, executed supporting declaration of Dr. Curtis was received by the law office of Tanner Churchill Anderson was the subject complaint filed, on August 3, 2021 at 4:35 p.m." At the hearing on the motion to dismiss, PAM's attorney raised to the district court that the email from Dr. Curtis indicated the doctor had two declarations and nothing

SUPREME COURT
OF
NEVADA

(O) 1947A

16

in his email referenced the Limprasert case specifically. PAM's attorney, however, said she was "comfortable accepting [Limprasert's attorney's] . . . representation because I'm familiar with him and I find him to be very trustworthy . . . [although] it is not . . . proof positive of the matter asserted."

We conclude the declaration was central to Limprasert's alternative theory of liability of professional negligence and was made under penalty of perjury. PAM did not question the authenticity of the declaration or its date because PAM's attorney stated at the hearing that she was comfortable trusting the representation of Limprasert's attorney as to the document's authenticity. Thus, the district court should have deemed the declaration incorporated by reference in the complaint and considered it when reviewing the motion to dismiss.

We note that unlike *Baxter*, Limprasert did not serve the complaint and the declaration contemporaneously, PAM's motion to dismiss was filed before the declaration, and the declaration was filed after the statute of limitations on the claim had expired. PAM, however, was aware of the declaration through the complaint and had the opportunity to challenge its sufficiency at the hearing. We agree with Limprasert that PAM has not shown it was negatively affected by the late filing of the declaration. Moreover, reading the declaration with the complaint is consistent with the policy goals of NRS 41A.071 because the declaration of Dr. Curtis and the affidavit of Limprasert's attorney support that Dr. Curtis gave his medical opinion before the filing of the complaint. Although Dr. Curtis's declaration does not mention the complaint expressly and is more specific regarding certain details than the complaint, we conclude the declaration supports Limprasert's allegations and demonstrates he engaged

SUPREME COURT
OF
NEVADA

(O) 1947A

in good faith to support his claim with expert medical opinion before filing. Accordingly, we determine the district court erred by dismissing the complaint for noncompliance with NRS 41A.071.[4]

## CONCLUSION

The Legislature has constructed a strict scheme for professional negligence actions in Nevada, and that scheme includes a definition of professional negligence and exceptions to the affidavit requirement that are intentionally narrow. We hold that to distinguish professional from ordinary negligence, the relevant question is whether the claim pertains to an action that occurred within the course of a professional relationship. If it does not, it is for ordinary negligence. If it does, it sounds in professional negligence and requires an affidavit under NRS 41A.071, unless it falls under the statutory exceptions enumerated in NRS 41A.100. The sole question for distinguishing professional and ordinary negligence relates to the nature of the conduct in the claim, specifically whether it arises from services rendered in the course of a professional relationship. We clarify that the complexity of a claim that involves a provider of health care rendering services cannot be used to transform a professional negligence claim into an ordinary negligence claim. We also hold that only the circumstances of res ipsa loquitur enumerated in NRS 41A.100 are exceptions to the affidavit requirement. Therefore, we overrule the common knowledge exception created in *Curtis*. In addition, we reiterate that an affidavit satisfies NRS 41A.071 under *Baxter* even when it is filed after the

---

[4]We have considered Limprasert's remaining arguments, including his assertions that the district court misunderstood the facts and that the district court erroneously assumed the declaration may not have been served, and we discern no errors.

complaint, if it was incorporated by reference in the complaint and executed before the complaint was filed.

Here, although Limprasert's claims sound in professional negligence, the district court erred by dismissing the complaint for noncompliance with NRS 41A.071. Therefore, we reverse the district court's order dismissing Limprasert's professional negligence claims and remand for further proceedings consistent with this opinion.

_____, J.
Stiglich

We concur:

_____, C.J.
Cadish

_____, J.
Herndon

_____, J.
Parraguirre

_____, J.
Pickering

_____, J.
Lee

_____, J.
Bell

