141 Nev., Advance Opinion 64

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| RENOWN REGIONAL MEDICAL CENTER AND EMILIE C. HYLAND, RN,<br>Petitioners,<br>vs.<br>THE SECOND JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF WASHOE; AND THE HONORABLE LYNNE K. JONES, DISTRICT JUDGE,<br>Respondents,<br>   and<br>MELISSA FREEMAN, INDIVIDUALLY AND AS ADMINISTRATOR AND PERSONAL REPRESENTATIVE OF THE ESTATE OF SCOTT FREEMAN; BROWN CALVANESE CAMERON LTD., D/B/A NORTHERN NEVADA EMERGENCY PHYSICIANS; DAVID BENARON, M.D.; AND TYLER CLINE, RN,<br>Real Parties in Interest. | No. 89838<br><br><br>FILED<br>DEC 11 2025<br>ELIZABETH A. BROWN<br>CLERK OF SUPREME COURT<br>BY_____<br>CHIEF DEPUTY CLERK |

Original petition for a writ of mandamus challenging district court orders denying in part a motion to dismiss a claim in a professional negligence action and denying a motion for reconsideration.

*Petition granted.*

Hall Prangle & Schoonveld, LLC, and Casey W. Tyler and Richard D. DeJong, Las Vegas,
for Petitioners.

Claggett & Sykes Law Firm and Sean K. Claggett, Jennifer Morales, Shannon L. Wise, Amelia M. Mallette, Micah S. Echols, David P. Snyder, and Charles L. Finlayson, Las Vegas,
for Real Party in Interest Melissa Freeman.

Lemons, Grundy & Eisenberg and Edward J. Lemons and Alice Campos Mercado, Reno,
for Real Parties in Interest Northern Nevada Emergency Physicians and David Benaron, M.D.

Olson, Cannon, Gormley & Stoberski and James R. Olson and Stephanie M. Zinna, Las Vegas,
for Real Party in Interest Tyler Cline, RN.

---

BEFORE THE SUPREME COURT, HERNDON, C.J., and BELL and STIGLICH, JJ.

## OPINION

By the Court, STIGLICH, J.:

Scott Freeman was allegedly discharged in the middle of the night from petitioner Renown Regional Medical Center after being treated for mere hours. Scott's wife, real party in interest Melissa Freeman, was traveling at the time, and thus, there was no adult in the home to receive Scott or provide him with care following his discharge. When Melissa arrived home in the morning, she found Scott unconscious. Scott later died. Melissa sued Renown, petitioner Emilie Hyland, RN (together, when possible, petitioners), and several other entities and individuals, asserting both professional negligence and ordinary negligence. Petitioners moved to dismiss the ordinary negligence claim, arguing that it sounded in professional negligence. The district court denied that motion. The court

also denied petitioners' subsequent motion for reconsideration, concluding the decision to discharge Scott was, at least partially, an administrative decision that sounded in ordinary negligence. Petitioners now challenge the district court's rulings by way of the instant petition for a writ of mandamus.

In *Limprasert v. PAM Specialty Hospital of Las Vegas LLC*, we clarified that to determine whether a claim sounds in professional negligence, the central question is "whether the claim pertains to an action that occurred within the course of a professional relationship." 140 Nev., Adv. Op. 45, 550 P.3d 825, 830 (2024). The decision to discharge Scott occurred in the course of the professional relationship between petitioners and Scott. Thus, regardless of any administrative aspect, the decision to discharge Scott and any causes of action related to that decision sound in professional negligence, not ordinary negligence. For an ordinary negligence claim against a health care provider to survive as a stand-alone claim, it must be based on conduct that is independent of the medical relationship. Because the negligence alleged here was not independent of the medical relationship, we grant the petition for a writ of mandamus.

## FACTS AND PROCEDURAL HISTORY

Scott had multiple serious, chronic medical conditions, including end-stage renal failure requiring dialysis, hypertension, insulin-dependent diabetes, and vascular disease resulting in an amputation.[1] On October 26, 2022, Scott's minor daughter discovered Scott unconscious on

---

[1]Because this case is at the motion-to-dismiss stage of the proceedings, we accept as true the facts alleged in Melissa's first amended complaint. *See Buzz Stew, LLC v. City of North Las Vegas*, 124 Nev. 224, 227-28, 181 P.3d 670, 672 (2008).

the bathroom floor, covered in fecal matter. Scott's daughter called 911 over a three-way call with Melissa, who was away on a trip. When the emergency medical services team (the EMS) arrived, Scott's daughter informed the EMS that Scott had been battling flu-like symptoms that day. The EMS noted that Scott was in an "altered level of consciousness," but the EMS permitted Scott to shower once his mental status appeared to improve. After the shower, the EMS noted that Scott was "hypertensive, hyperglycemic, and had difficulty staying awake." The EMS also noted that Scott exhibited "rhythmic twitching/flexing of extremities with decreasing level of mentation." At that point, the EMS transported Scott to Renown, during which time Scott's condition deteriorated. Notably, due to the alteration in his mental status, Scott had been unable to sign a consent for treatment and transport to Renown.

Renown assumed care of Scott at 11:50 p.m. Less than an hour later, at 12:45 a.m., a physician entered a discharge order. At 12:58 a.m., Melissa contacted the nursing staff with concerns about Scott's up-trending glucose levels, which Melissa could monitor through her phone. Melissa also expressed concern to the nursing staff about Scott's ability to treat these high glucose levels at home because there were no adults at home to receive or care for Scott. The nursing staff did not document Melissa's concerns or relay the information to Scott's doctor. Scott was ultimately wheeled to Renown's lobby by a nurse at 1:29 a.m. and was permitted to take an Uber home alone.

Melissa arrived home less than eight hours later. She discovered Scott on the bathroom floor, unresponsive and gurgling. Melissa called paramedics, and Scott was taken to a different medical center, where diagnostic imaging revealed a large acute subdural hematoma and diabetic

ketoacidosis. Scott was intubated, and doctors operated to remove the subdural hematoma. Scott suffered brain damage, required prolonged hospitalization, and eventually died.

Melissa sued petitioners, as well as several other defendants, before Scott's death.[2] In her first amended complaint, Melissa asserted, in relevant part, claims for professional negligence and negligent credentialing, hiring, training, supervision, and retention. Regarding the claim for negligent credentialing, hiring, training, supervision, and retention, Melissa alleged that Renown knew or should have known its medical staff was unfit to properly care for and treat Scott. She further alleged that the medical staff fell below the standard of care in rendering services to Scott by "failing to hire, train, supervise, and retain competent employees." And Melissa also alleged that Renown should have policies, procedures, and training in place regarding patient advocacy and safely discharging emergency room patients.

Petitioners moved to dismiss the claim for negligent credentialing, hiring, training, supervision, and retention, arguing that it was inextricably linked to the professional negligence claim and therefore should be subsumed under the professional negligence claim. Petitioners alternatively argued that the claim should be dismissed because the NRS 41A.071 affidavit did not set forth specific acts of the alleged negligence as to each defendant. The district court concluded the claim for negligent credentialing, hiring, training, supervision, and retention did not raise questions of medical judgment beyond the realm of common knowledge and experience. Thus, the court determined the claim fell under the common

_____

[2]Scott was originally named as a plaintiff as well but was replaced by his estate after his death.

knowledge exception set forth in *Estate of Curtis v. South Las Vegas Medical Investors, LLC*, 136 Nev. 350, 353, 466 P.3d 1263, 1266-67 (2020).

Thereafter, this court issued its opinion in *Limprasert*, and petitioners moved the district court for reconsideration in light of that decision. The district court determined *Limprasert* did not overrule previous cases holding that health care providers can be liable for ordinary negligence when they commit negligent acts outside of providing medical services. Relying on our previous holdings in *DeBoer v. Senior Bridges of Sparks Family Hospital, Inc.*, 128 Nev. 406, 282 P.3d 727 (2012), and *Szymborski v. Spring Mountain Treatment Center*, 133 Nev. 638, 403 P.3d 1280 (2017), the district court found that the essence of Melissa's claim was that Renown "failed to perform an administrative function rather than a medical function." Analogizing Melissa's claim to the nonmedical services at issue in *DeBoer* and *Szymborski*, the district court denied petitioners' motion for reconsideration.

Melissa then filed a second amended complaint, individually and as the special administrator of Scott's estate upon Scott's death. The second amended complaint included a new expert affidavit and a new claim for wrongful death. After Melissa filed the second amended complaint, petitioners filed the instant petition challenging the district court's earlier denial of their motion to dismiss the claim for negligent credentialing, hiring, training, supervision, and retention, as well as the denial of their motion for reconsideration.

## DISCUSSION

"A writ of mandamus is available to compel the performance of an act that the law requires as a duty resulting from an office, trust, or station or to control an arbitrary or capricious exercise of discretion." *Int'l Game Tech., Inc. v. Second Jud. Dist. Ct.*, 124 Nev. 193, 197, 179 P.3d 556,

Supreme Court
OF
Nevada

(O) 1947A

6

558 (2008) (footnote omitted) (citing NRS 34.160). When a district court is entrusted with discretion to resolve an issue, traditional mandamus will lie only where the court "has *manifestly* abused that discretion or acted arbitrarily or capriciously," that is, "only where 'the law is overridden or misapplied, or when the judgment exercised is manifestly unreasonable or the result of partiality, prejudice, bias or ill will.'" *Walker v. Second Jud. Dist. Ct.*, 136 Nev. 678, 680-81, 476 P.3d 1194, 1196-97 (2020) (quoting *State v. Eighth Jud. Dist. Ct. (Armstrong)*, 127 Nev. 927, 932, 267 P.3d 777, 780 (2011)).

*We elect to entertain the petition*

Generally, we will not consider writ petitions that challenge interlocutory orders denying motions to dismiss "because an appeal from the final judgment typically constitutes an adequate and speedy legal remedy." *Int'l Game Tech.*, 124 Nev. at 197, 179 P.3d at 558. We have nevertheless delineated two exceptions to this general rule. The first exception is when "no factual dispute exists and the district court is obligated to dismiss an action pursuant to clear authority under a statute or rule." *Id.* at 197, 179 P.3d at 559. The second is when "an important issue of law needs clarification and considerations of sound judicial economy and administration militate in favor of granting the petition." *Id.* at 197-98, 179 P.3d at 559.

The first exception to the general rule applies here. The parties do not dispute the material facts. And applying *Limprasert* to those facts, the district court was obligated to grant petitioners' motion. *Limprasert* is clear authority, which the district court misapplied. Thus, we elect to entertain the petition.

In doing so, we also reject Melissa's argument that the second amended complaint rendered the petition moot. The claim at issue was

asserted in the second amended complaint and is substantively identical to the claim as alleged in the first amended complaint. Because the second amended complaint does not alter the issue of whether the claim for negligent credentialing, hiring, training, supervision, and retention sounds in professional negligence, it "neither renders the legal issue abstract nor prevents us from granting effectual relief to the prevailing party." *Orbitz Worldwide, LLC v. Eighth Jud. Dist. Ct.*, 139 Nev. 367, 372 n.5, 535 P.3d 1173, 1178 n.5 (2023). We therefore turn to the petition's merits.

*Melissa's claim for negligent credentialing, hiring, training, supervision, and retention sounds in professional negligence*

Petitioners argue that the claim for negligent credentialing, hiring, training, supervision, and retention concerns services rendered by a medical provider. Thus, petitioners contend the claim sounds in professional negligence and the district court erred by denying the motion to dismiss the claim or by failing, in the alternative, to subsume the claim under the professional negligence claim.

NRS 41A.015 defines "[p]rofessional negligence" as "the failure of a provider of health care, in rendering services, to use the reasonable care, skill or knowledge ordinarily used under similar circumstances by similarly trained and experienced providers of health care." NRS 41A.017, in turn, lists the providers of health care to which NRS 41A.015 applies. Because the parties do not dispute that petitioners are providers of health care, we need only address whether Melissa's claim sounds in professional negligence, as defined by NRS 41A.015.

As we noted in *Limprasert*, NRS 41A.015's "definition suggests that a claim arising from services rendered within the course of the relationship between a patient and a health care provider sounds in professional negligence." 140 Nev., Adv. Op. 45, 550 P.3d at 829. Thus, we

held "[t]he sole inquiry is whether the claim involves a provider of health care rendering services in a way that causes injury." *Id.* at 831. And we clarified that this analysis does not depend "on the complexity of proving a claim" or "whether an expert affidavit or expert testimony is needed for a jury to understand the allegations." *Id.* Instead, the relevant analysis is whether the "gravamen" of a claim is based on allegations of a "breach of duty involving medical judgment, diagnosis, or treatment." *Szymborski*, 133 Nev. at 642-43, 403 P.3d at 1284-85. Additionally, in *Estate of Curtis*, we concluded that where the underlying allegations "are inextricably linked to professional negligence," parties cannot "circumvent NRS Chapter 41A's requirements" by framing the claim as one for "negligent hiring, training, and supervision." 136 Nev. at 353, 466 P.3d at 1266-67, *overruled on other grounds by Limprasert*, 140 Nev., Adv. Op. 45, 550 P.3d at 831. Thus, under our caselaw, if a negligent action occurs during the course of the medical relationship, any legal claim stemming from that negligent action sounds in professional negligence, not ordinary negligence. In other words, for an ordinary negligence claim against a health care provider to survive as a stand-alone claim, it must be based on conduct that is independent of the medical relationship.

Despite the clear direction of these cases, the district court erroneously concluded that if a claim involves an administrative decision that occurred during the course of the professional relationship, claims for both professional negligence and ordinary negligence could proceed. But the gravamen of Melissa's claim is not independent of petitioners' medical relationship with Scott. Melissa alleges that petitioners were negligent in effectuating Scott's discharge given Scott's medical history, his condition before and while receiving treatment at Renown, and because no adult was

able to pick him up from Renown or care for him once he returned home. The decision to discharge Scott, given his medical history and treatment at Renown, involves medical diagnosis, treatment, or judgment. Indeed, Melissa's professional negligence claim alleges that petitioners were negligent for failing to admit Scott for extended observation, given his complex medical history, and that petitioners "fell below the standard of care by [failing] to arrange a safe discharge plan for Scott." Similarly, Melissa's allegations that one of the nurses failed to record or communicate Melissa's concerns regarding Scott's glucose levels and the lack of an adult at home to care for Scott are not independent of the medical relationship between petitioners and Scott. Instead, the nurse's actions are inextricably or inherently linked to petitioners' actions in effectuating Scott's discharge. *See Est. of Curtis*, 136 Nev. at 353, 466 P.3d at 1266-67.

Melissa also alleges that Renown should have had policies in place for the safe discharge of patients, but such policies are also not independent of the medical relationship between Renown and Scott. We addressed a similar issue in *Montanez v. Sparks Family Hospital, Inc.*, 137 Nev. 742, 499 P.3d 1189 (2021). In that case, a patient's eye became infected shortly after surgery, which left her permanently blind in one eye. *Id.* at 742-43, 499 P.3d at 1191. The patient sued the medical center where she received the surgery, asserting in relevant part a premises liability claim based on the medical center's failure to keep the facilities clean, which she alleged caused the bacterial infection. *Id.* at 743, 499 P.3d at 1191. On appeal, the patient argued that her complaint did not require an NRS 41A.071 affidavit because the medical center's failure to keep its facilities clean was "separate from any form of medical malpractice." *Id.* at 745, 499 P.3d at 1193. Rejecting the plaintiff's argument, we concluded that a

plaintiff's injury from a bacterial infection, based on allegations that a medical center failed to keep its facilities clean, sounded in professional negligence because "the level of cleanliness that a medical provider must maintain is *inherently linked* to the provision of medical treatment." *Id.* Thus, despite the patient framing the claim as a premises liability claim, we held that the claim sounded in professional negligence, and the district court therefore correctly dismissed the claim for lacking an NRS 41A.071 affidavit. *Id.* at 746, 499 P.3d at 1193. As in *Montanez*, Melissa's claim regarding Renown's discharge policies sounds in professional negligence because such policies are inherently linked to the provision of medical treatment.

In determining that Melissa's claim for negligent credentialing, hiring, training, supervision, and retention sounded in ordinary negligence, the district court misconstrued our prior caselaw. The district court relied on *Szymborski* and *DeBoer*, both of which are distinguishable. In *Szymborski*, a father brought multiple claims against a mental health treatment center after the center discharged his son and the son caused $20,000 in damage to the father's property. 133 Nev. at 640, 403 P.3d at 1283. Specifically, the father contended the treatment center was negligent when it arranged to have the son dropped off at the father's house without notifying the father, especially when the treatment center knew of the volatile relationship between the father and son. *Id.* at 644, 403 P.3d at 1286. *Szymborski* is distinguishable because it involved the father's claims for damages when the father had no professional relationship with the medical providers. Whereas here, Melissa is bringing the underlying claims on Scott's behalf, and the claims specifically involve damages suffered by Scott as part of the professional relationship. Thus, the underlying facts

alleged in *Szymborski* did not require "diagnosis, treatment, and judgment" in the context of the medical relationship between the patient and the health care provider, but the facts here do.

Similarly, as we stated in *Limprasert*, the claim at issue in *DeBoer* arose outside of the professional relationship between a patient and health care provider. 140 Nev., Adv. Op. 45, 550 P.3d at 829. In *DeBoer*, a patient with dementia suffered financial damages due to the actions of a social worker employed by the acute care facility treating the patient. 128 Nev. at 408, 412, 282 P.3d at 729, 732. The social worker had provided the patient with a preprinted general power-of-attorney form, which gave a third party power over the patient's financial and personal affairs. *Id.* at 408, 282 P.3d at 729-30. The third party subsequently misappropriated the patient's money, real property, and other assets. *Id.* at 408, 282 P.3d at 730. We concluded that "[a] social worker helping a patient to establish financial arrangements in effectuating the patient's discharge cannot be regarded as a medical function." *Id.* at 411, 282 P.3d at 731. Because the social worker was acting outside of the professional relationship between the patient and the acute care facility, the claim sounded in ordinary negligence, not professional negligence. Here, unlike *DeBoer*, none of the parties Melissa sued were acting independent of the professional relationship between Scott and his health care providers.

Dissimilar to the plaintiffs in *DeBoer* and *Szymborski*, Melissa is bringing claims on behalf of the patient, Scott, against Scott's medical providers concerning actions that occurred during their professional relationship with Scott. Under *Limprasert*, Melissa's claims therefore sound in professional negligence. And styling a claim as negligent credentialing, hiring, training, supervision, and retention does not take

Melissa's claim outside of the professional negligence realm. *See Est. of Curtis*, 136 Nev. at 353, 466 P.3d at 1266-67. Thus, even treating all the allegations as true and viewing them in the light most favorable to Melissa, the claim for negligent credentialing, hiring, training, supervision, and retention sounds in professional negligence.

Accordingly, the district court manifestly abused its discretion by denying petitioners' motion to dismiss on this ground and by denying petitioners' motion for reconsideration in light of *Limprasert*. While petitioners sought dismissal of the claim outright, they alternatively requested the claim be subsumed under Melissa's professional negligence claim. Melissa included expert affidavits that complied with NRS 41A.071, addressing the underlying claim. Petitioners do not specifically challenge those affidavits. Thus, we necessarily conclude that outright dismissal of the claim for negligent credentialing, hiring, training, supervision, and retention is unnecessary because the claim can be properly subsumed under the professional negligence claim.

## CONCLUSION

To determine whether a claim sounds in professional negligence for purposes of NRS Chapter 41A, the central question remains "whether the claim pertains to an action that occurred within the course of a professional relationship." *Limprasert*, 140 Nev., Adv. Op. 45, 550 P.3d at 830. For an ordinary negligence claim against a health care provider to survive as a stand-alone claim, it must be based on conduct that is independent of the medical relationship. Claims that are inextricably or inherently linked to actions occurring during the course of a medical relationship between a patient and a health care provider sound in professional negligence and remain subject to the requirements and

limitations for professional negligence actions set forth in NRS Chapter 41A.

We therefore grant the petition and direct the clerk of this court to issue a writ of mandamus instructing the district court to vacate the portion of its order denying petitioners' motion to dismiss Melissa's stand-alone claim for negligent credentialing, hiring, training, supervision, and retention. The writ shall further instruct the district court to grant petitioners' request to subsume that claim under Melissa's professional negligence claim.

_____, J.
Stiglich

We concur:

_____, C.J.
Herndon

_____, J.
Bell